ORIGINAL

FILED IN CLERK'S OFFICE

AUG 2 4 2004

LUTHER D. THOMAS, Clerk
By: Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MICHAEL BRYANT, JOHN DRAKE, BECKY KELLEY AND HERBERT LOWE Plaintiffs, v. VERNON JONES, MARILYN BOYD DREW, MORRIS WILLIAMS, RICHARD STOGNER and JOE STONE in their individual capacities and in their official capacities, Defendants. | CIVIL ACTION FILE NO: 1 04-CV-2462 WSD<br>JURY TRIAL DEMANDED |

**COMPLAINT**

Plaintiffs Michael Bryant, John Drake, Becky Kelley and Herbert Lowe file this Complaint against Defendants Vernon Jones, Marilyn Boyd Drew, Morris Williams, Richard Stogner and Joe Stone, in their individual capacities and in their official capacities, to redress intentional race discrimination and other civil rights violations pursuant to 42 U.S.C. § 1983, 42 U.S.C., § 1981, 42 U.S.C. § 1985, 42 U.S.C. § 1988, and the First and Fourteenth Amendments of the United States Constitution as follows:

FORM. RECEIVING
Consent to Trial ...
Pretrial Instructions ✓
Title VII NTC

**PARTIES**

1.

Plaintiff Michael Bryant is a citizen of the United States who is a resident of the state of Georgia and who is currently, and was at all relevant times, employed by DeKalb County. Plaintiff Bryant's race is white.

2.

Plaintiff John Drake is a citizen of the United States who is a resident of the state of Georgia and who is currently, and was at all relevant times, employed by DeKalb County. Plaintiff Drake's race is white.

3.

Plaintiff Becky Kelley is a citizen of the United States who is a resident of the state of Georgia and who at all relevant times was employed by DeKalb County. Plaintiff Kelley's race is white.

4.

Plaintiff Herbert Lowe is an African-American citizen of the United States who is a resident of the state of Georgia and who at all relevant times was employed by DeKalb County.

5.

Defendant Vernon Jones ("Jones"), an African-American, is the Chief Executive Officer of DeKalb County, who at all relevant times were acting under color of law. Jones is sued in his individual capacity and in his official capacity. Service of process may be made upon Defendant Jones at his place of business, Maloof Center, Sixth Floor, Government Administration, 1300 Commerce Drive, Decatur, Georgia 30030.

6.

Defendant Marilyn Boyd Drew ("Drew"), an African-American, is employed by DeKalb County as Director of the County Parks and Recreation Department ("Parks and Recreation Department") who at all relevant times were acting under color of law. Drew is sued in her individual capacity and in her official capacity. Service of process may be made upon Defendant Drew at her place of business, Maloof Center, Second Floor, Government Administration, 1300 Commerce Drive, Decatur, Georgia 30030.

7.

Defendant Morris Williams ("Williams"), an African-American, is employed by DeKalb County as Assistant County Administrator who at all relevant times was acting under color of law. Williams is sued in his individual capacity and in his official capacity. Service of process may be made upon

Defendant Williams at his place of business, Maloof Center, Sixth Floor, Government Administration, 1300 Commerce Drive, Decatur, Georgia 30030.

8.

Defendant Joe Stone ("Stone"), an African-American, is employed by DeKalb County as Director of Human Resources who at all relevant times was acting under color of law. Stone is sued in his individual capacity and in his official capacity. Service of process may be made upon Defendant Stone at his place of business, Maloof Center, First Floor, Government Administration, 1300 Commerce Drive, Decatur, Georgia 30030.

9.

Defendant Richard Stogner ("Stogner") is white and is employed by DeKalb County as Executive Assistant to the Chief Executive Officer. At all relevant times Stogner was acting under color of law. Stogner is sued in his individual capacity and in his official capacity. Service of process may be made upon Defendant Stogner at his place of business, Maloof Center, Sixth Floor, Government Administration, 1300 Commerce Drive, Decatur, Georgia 30030.

10.

Upon information and belief, each Defendant resides in DeKalb County, Georgia.

## JURISDICTION

11.

This case arises under 42 U.S.C. § 1983, 42 U.S.C. § 1981, 42 U.S.C. § 1985, 42 U.S.C. § 1988, 42 U.S.C. § 2000(e) et seq., and the First and Fourteenth Amendments of the United States Constitution.

12.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343(3)-(4).

## VENUE

13.

Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391.

## FACTS

### A. Plaintiffs' DeKalb County Employment History

14.

Plaintiff Kelley was employed by DeKalb County since 1976 until she was constructively discharged on September 25, 2002. Plaintiff Kelley served as the Director of DeKalb County Parks and Recreation Department from 1992 until her constructive discharge.

15.

During her twenty-seven (27) year tenure with DeKalb County, Kelley worked directly under several Chief Executive Officers and directly reported to former Chairman/Chief Executive Officer Manuel Maloof and Chief Executive Officer Liane Levetan.

16.

Kelley consistently received outstanding performance evaluations during her tenure with DeKalb County.

17.

Plaintiff Lowe was employed by DeKalb County as the Deputy Director of Strategic Management and Development for the Parks and Recreation Department in September, 2002. Plaintiff Lowe was terminated from his employment on February 13, 2004.

18.

During his tenure, Plaintiff Lowe reported directly to Defendant Jones, Defendant Drew, and Defendant Jones' Chief of Staff Ann Kimbrough. During his tenure, Plaintiff Lowe never received a negative or adverse performance appraisal.

19.

Plaintiff Drake has been employed by DeKalb County since 1975 in various capacities, including but not limited to, Deputy

Director of DeKalb County Parks and Recreation and Assistant Director of Purchasing and Contracting. Plaintiff Drake is currently employed in the capacity of Assistant Director of DeKalb County Parks and Recreation Department.

20.

During his tenure, Plaintiff Drake never received a negative or adverse performance appraisal.

21.

Plaintiff Bryant has been employed with DeKalb County since May 2000. Plaintiff Bryant is currently employed in the capacity of Deputy Director of Revenue Management and Support Services for the DeKalb County Parks and Recreation Department.

22.

During his tenure Bryant has never received a negative or adverse performance evaluation.

**B. Defendants' Scheme To Get Rid of White Employees**

23.

Defendant Jones took office as DeKalb County's Chief Executive Officer ("DeKalb County CEO") on January 1, 2001.

24.

From January 1, 2001 through the present, Defendants Jones, Williams, Stone, Stogner and Drew conspired to remove upper

level white managers in the Parks and Recreation Department from their jobs on the basis of their race.

25.

Defendants' actions to remove upper level white managers from these jobs constituted a policy, practice, or procedure of the DeKalb County Parks and Recreation Department and in the office of the DeKalb County CEO.

26.

In an effort to accomplish this goal, Defendants Jones, Williams, Drew and Stone instructed Plaintiff Lowe to "dig up dirt" on white assistant and deputy directors, including Plaintiffs Bryant and Drake so that the white managers could be reprimanded, forced to resign or terminated.

27.

Defendants Jones, Drew, Williams, and Stone explicitly told Plaintiff Lowe that they wanted to get rid of certain white assistant and deputy directors, including Plaintiffs Bryant and Drake, because of their race.

28.

All Defendants but Stogner stated that they wanted to have a "darker administration" to reflect "the new DeKalb County," meaning that they wanted the management of DeKalb County to have fewer white managers.

29.

Defendant Drew repeatedly told Plaintiff Lowe that she did not like having white assistant and deputy directors, including Plaintiffs Bryant and Drake, in the Parks and Recreation Department.

30.

Defendant Drew also stated to Plaintiff Lowe that she wanted to get rid of Plaintiff Kelley because she is white.

31.

Defendant Jones told Plaintiff Lowe that Plaintiff Kelley was forced from her position as Director of Parks and Recreation because of her race.

32.

Plaintiff Lowe told Defendant Jones that he would not participate or aid them in their scheme to get rid of upper level white managers within the Parks and Recreation Department.

33.

Defendant Jones threatened Plaintiff Lowe that if Plaintiff Lowe wanted to be a "part of the team," then he must participate in Defendants' plan to rid DeKalb County and the Parks and Recreation Department of white managers.

34.

When Plaintiff Lowe refused to participate in Defendants' discriminatory practices, his office was moved from the Parks and Recreation Department to the offices of Defendant Jones. However, Plaintiff Lowe continued to fulfill his responsibilities as a Deputy Director for Parks and Recreation.

35.

Defendant Jones told Plaintiff Lowe that no one could fire him "but the CEO." Defendant Jones also told Plaintiff Lowe "We don't fire certain people around here. The way we get rid of them is by eliminating their jobs."

36.

Defendant Jones specifically asked Plaintiff Lowe whether he would "do what was necessary for the team." Plaintiff Lowe told Defendant Jones that he believed that the white assistant and deputy directors were doing their jobs and that he would not participate in illegal race discrimination. After Plaintiff Lowe told Defendant Jones that he would not participate in discriminatory practices, his position was subsequently abolished with DeKalb County.

37.

Ultimately, Plaintiff Lowe's employment with DeKalb County was terminated on February 13, 2004.

38.

In May 2004, Plaintiff Lowe told Plaintiffs Bryant, Drake, and Kelley that Defendants discriminated against them because of their race.

39.

This was the first time Plaintiffs Bryant, Drake and Kelley were told the actions taken against them were on account of their race.

40.

Upon taking office, and consistent with the scheme that Defendants revealed to Plaintiff Lowe, Defendants created a racially hostile work environment which permeated the terms and conditions of Plaintiffs' employment in an attempt to force Plaintiffs to resign from their jobs.

41.

Defendant Jones announced at a March 30, 2001 meeting at which Plaintiffs were present that he "didn't come in just to throw white people out and put blacks in, but that he intended to make DeKalb County's team look like DeKalb County."

42.

On or about May 17, 2002 Defendant Drew instructed Plaintiffs to hire individuals in the Parks and Recreation Department "who reflect the DeKalb County population."

43.

After Defendant Jones assumed office, Defendants began excluding white managers from meetings and discussions which were relevant to their job duties.

44.

Defendants prohibited Plaintiffs from speaking with members of the DeKalb County Board of Commissioners or to the media because Defendants wanted to project a "black administration."

45.

Certain members of the DeKalb County Board of Commissioners encouraged the racial preferences of the Jones' administration. Commissioner Lou Walker introduced Defendant Drew at a public event and announced to the crowd of African-American citizens, "She is the new Parks Director and she looks like you."

46.

Commissioner Hank Johnson told Plaintiff Kelley that Commissioner Lou Walker stated to him that he was not going to support any program that came from "that little white woman," referring to Plaintiff Kelley.

47.

Defendant Stogner told Plaintiff Kelley that Jones' administration's perception of her was that she was unable to relate to "powerful black men."

48.

Defendant Stogner told Plaintiff Kelley that she didn't understand the geopolitical environment in which she was employed, which was reflected by her unwillingness to showcase black employees.

49.

On January 24, 2001 Plaintiff Kelley met privately with Defendant Jones in his office. Defendant Jones told Plaintiff Kelley that she was never to discuss any issue regarding the Parks Department with the media. Prior to this discussion, Plaintiff Kelley's duties included speaking to the media.

50.

Jones also told Plaintiff Kelley that she was only to speak to the DeKalb County Board of Commissioners if she was spoken to first by a commissioner. Prior to this discussion, Plaintiff Kelley's duties included informing commissioners about projects in their districts.

51.

During the aforesaid meeting Defendant Jones jumped from his chair and stepped toward Plaintiff Kelley in a frightening and threatening manner. Plaintiff Kelley believed she was in a dangerous situation and left the office.

52.

Defendant Stogner told Plaintiff Kelley that she needed to put extra resources into the County's "black parks."

53.

Defendant Stogner told Plaintiff Kelley that she needed to put Defendant Drew in plain view of the DeKalb County Board of Commissioners because Defendant Drew is African-American.

**C. Racial Preferences In Hiring**

54.

Defendants explicitly instructed Plaintiffs to give preferential treatment to African-American employment candidates.

55.

Defendant Stogner instructed Plaintiff Kelley that Defendant Williams was to be present at all interviews conducted by Plaintiff Kelley for positions within the Parks and Recreation Department. Defendant Stogner said that the reason Defendant Williams was to participate in the meetings was to ensure Defendant Jones' desire that minority candidates were given preferential consideration.

56.

During interviews for the position of Deputy Director of Recreation within the Parks and Recreation Department, Defendant

Williams told Plaintiff Kelley that he was "quite impressed by and really liked" one of the candidates but that he was "in a dilemma because he could not recommend the individual for the position because he is white."

57.

Plaintiff Bryant was part of the interview committee that interviewed candidates for the position of Sports Coordinator within the Parks and Recreation Department. The interview committee, which included three African-Americans, recommended a white woman for the position. Defendant Drew, however, refused to hire the recommended candidate because of her race. Drew instructed Bryant to hire the black applicant to "reflect the race of the community."

58.

Plaintiff Kelley was involved in the initial hiring of Defendant Drew as a Deputy Director. Stogner instructed Plaintiff Kelley to pay Defendant Drew one pay step higher than Plaintiff Bryant, who had been a Deputy Director with the Parks and Recreation Department for more than a year.

59.

Defendant Stogner told Plaintiff Kelley that she would be "getting in good with Morris [Defendant Williams]" by bringing

Defendant Drew in at a higher pay level than existing "white" employees.

**D. Disparate Treatment**

60.

Input and communications from white assistant and deputy directors regarding department programs were ignored by Defendants, while Defendants sought input from African-American employees.

61.

Plaintiff Kelley was effectively excluded from the DeKalb County Parks and Greenspace Bond Program, even though she should have been involved as Director of Parks and Recreation. In fact, Plaintiff Kelley was not allowed to speak during public hearings regarding the Parks and Greenspace Bond Program and was relegated to running Power Point presentations.

62.

When Plaintiff Kelley expressed concern to Defendant Stogner about this situation and other similar exclusionary incidents, Defendant Stogner responded that Defendant Jones's Chief of Staff, Pam Holmes, was "too biased in her dealings with white people" but that he would talk to Defendant Jones. However, nothing ever resulted to improve the situation for Plaintiff Kelley.

63.

Defendant Drew did not invite any white assistant and deputy directors to attend the annual National Recreation and Parks Association Conference, but instead took only African-American Deputy Director Billups, and two African-American employees, Al Shepherd and Detrick Stanford, who were subordinates to the white assistant and deputy directors. During her tenure, Defendant Drew has only invited African/American employees to attend work related conferences with her.

64.

African-American deputy directors and staff persons had access to their supervisor Defendant Drew to discuss work-related issues; however, white deputy directors were not provided the same access, and suffered as a result.

65.

Gary Dalton, Parks Operations General Manager, who is African-American, had a standing time to meet with Defendant Drew each week.

66.

During the two plus years since Defendant Drew took over as Director of Parks and Recreation she has refused to complete performance evaluations on the white assistant and deputy

directors, including Plaintiffs Bryant and Drake. Defendant Drew did complete a performance review for African-American Deputy Director Marvin Billups.

67.

Plaintiffs Drake and Bryant repeatedly submitted proposed performance plans to Defendant Drew as part of the review process; however, Defendant Drew has refused to respond to these submissions.

68.

Defendant Drew's refusal to evaluate Plaintiff Bryant prevented him from receiving pay increases. African-American Deputy Director Billups has received pay increases.

69.

African-American Deputy Directors Billups and Plaintiff Lowe, who were hired after Plaintiff Bryant, received a starting salary higher than Plaintiff Bryant's. Billups, who has less tenure than Plaintiff Bryant, is currently paid more than Plaintiff Bryant for performing substantially similar duties.

70.

Defendant Drew has also refused to allow Plaintiff Bryant to utilize compensatory time he had earned, but has permitted African-American employees to utilize compensatory time.

71.

Defendant Drew refused to allow Plaintiff Bryant to return to work following surgery purportedly because Plaintiff Bryant had been placed on certain minor work restrictions by his doctor.

72.

Defendant Drew, however, permitted Dwight Hunter, an African-American employee, to return to work despite the fact that he had even greater work restrictions than Bryant.

73.

Drew permitted Deputy Director Billups to receive a mileage stipend each month, but refused to grant a mileage stipend to Plaintiff Bryant, who requested the same stipend.

74.

Defendant Jones' and his administration's race animus entered all aspects of Plaintiffs' work environment. Defendant Williams instructed Plaintiff Bryant to hire a "black" contractor to run the County's Sugar Creek Golf Course. Defendant Williams warned Bryant that Defendant Jones wanted this contract given to the black contractor. Defendant Williams instructed Plaintiff Bryant to turn off the tape recorder being used to record the minutes of the meeting during this portion of the conversation.

75.

In March 2002, Plaintiff Bryant informed Defendant Drew that the African-American contractor who was awarded the Sugar Creek Golf Course contract was paying his wife an excessively high salary over and above the management fee services. Defendant Drew responded by taking away Plaintiff Bryant's oversight of the golf courses.

76.

Plaintiff Drake complained to Defendant Drew and Defendant Stogner about financial improprieties at the Sugar Creek Golf Course. Defendant Drew removed Sugar Creek Golf Course from Plaintiff Drake's area of responsibility and reassigned Sugar Creek's oversight to an African-American employee.

77.

Plaintiffs expressed their problems with the hostility from Defendant Jones's administration to the Human Resources Department's Employee Relations Office through Defendant Stone; however, Defendant Stone failed to respond.

78.

Defendant Stone failed and members of his office failed to interview key witnesses to the race discrimination identified by Plaintiff Bryant as persons who would corroborate his allegations.

79.

Upon information and belief, Defendant Stone, in his role as head of Human Resources, was directed to rebuff complaints of discrimination by white employees, and Defendant Stone actively participated in protecting race discrimination carried out by Defendant Jones and other Defendants.

**E. Job Reassignments**

**1. Plaintiff Becky Kelley**

80.

In February 2002, pursuant to an Executive Order, Defendant Jones reassigned Plaintiff Kelley from her position as Director of Parks and Recreation to work exclusively on the Parks & Greenspace Bond program. Defendant Jones appointed Defendant Drew to assume Plaintiff Kelley's duties as Director of Parks and Recreation.

81.

Plaintiff Kelley was stripped of most of her duties and responsibilities, including most of her supervisory responsibilities.

82.

Plaintiff Kelley's budget was significantly reduced.

83.

Defendants' actions towards Plaintiff Kelley resulted in humiliation, decrease in job responsibilities and stature.

84.

Defendants' actions were meant to create a hostile environment that would force Plaintiff Kelley to resign. Plaintiff Kelley's work environment became so intolerable that she was forced to resign.

85.

Defendants Williams and Drew attempted to remove Plaintiff Kelley from her office space so that Defendant Drew could move into Plaintiff Kelley's office. Defendant Drew recommended that Plaintiff Kelley assume an office that was less that 8'x10' in size and did not have air conditioning vents or a window. This office was significantly less than her previous office which was 20' x 24' and did have air conditioning and a window.

**ii. Plaintiff Michael Bryant**

86.

Plaintiff Bryant was reassigned by Defendant Drew from his Decatur office to Tucker, Georgia. No African-American deputy directors were physically relocated.

87.

Prior to his reassignment, Plaintiff Bryant had been in charge of budgets for numerous department programs, including County golf courses and tennis centers, and had contracting and purchasing responsibility. Defendant Drew stripped Plaintiff Bryant of these duties and responsibilities. Plaintiff Bryant was effectively demoted by these reassignments.

**iii. Plaintiff John Drake**

88.

Plaintiff Drake was reassigned from the Purchasing and Contracting Department to the Parks and Recreation Department by Jones. Plaintiff Drake stated to Defendant Stogner that if he was going to be transferred, he would like to be considered for the Director position. Defendant Stogner responded that "too many political commitments had already been made." Defendant Stogner told Drake that they needed Plaintiff Drake to "prop her up" referring to Defendant Drew. Defendant Stogner further stated, "besides you'd have to give up your merit status." Defendant Drew was appointed Director by Defendant Jones, but maintained her merit system status.

## COUNT I

## 42 U.S.C. § 1983 Violation of Equal Protection

89.

The allegations contained in Paragraphs 1 through 88 above are incorporated herein by reference.

90.

The Equal Protection Clause of the Fourteenth Amendment prohibits discrimination against public employees on the basis of race.

91.

At all times relevant to this Complaint, Defendants were acting under the color of state law.

92.

Defendants intentionally discriminated against Plaintiffs Bryant, Drake and Kelley in the terms and conditions of their employment based on race.

93.

Defendants treated Plaintiffs disparately from other employees on the basis of race.

94.

Defendants created a racially-hostile work environment. Defendants' actions also created such a hostile work environment

for Plaintiff Kelley that she was constructively discharged from her position.

95.

Defendants actions violate the Equal Protection Clause of the Fourteenth Amendment of the Constitution and are actionable pursuant to U.S.C. §1983.

96.

Defendants' intentional race discrimination has proximately caused Plaintiffs Bryant, Drake and Kelley to suffer economic and other damages in an amount to be determined at trial.

97.

Defendants acted with malice and reckless indifference to the federally protected rights of Plaintiffs Bryant, Drake and Kelley for which punitive damages should be assessed against Defendants.

**COUNT II**

**42 U.S.C. § 1981 and U.S.C. § 1983 - Intentional Race Discrimination**

98.

The allegations contained in Paragraphs 1 through 97 above are incorporated herein by reference.

99.

Defendants intentionally discriminated against Plaintiffs in the terms and conditions of their employment based on race.

100.

Defendants treated Plaintiffs disparately from other employees on the basis of race and created a racially-hostile work environment both of which constitute a continuing violation of 42 U.S.C. § 1981 as enforced by U.S.C. § 1983, in violation of Plaintiffs' federally-protected rights.

101.

Defendants' intentional race discrimination has proximately caused Plaintiffs' to suffer economic and other damages in an amount to be determined at trial.

102.

Defendants acted with malice, and reckless indifference to Plaintiffs' federally protected rights, for which punitive damages should be assessed against Defendants.

**COUNT III**

**42 U.S.C. § 1985 –**

**Conspiracy To Deprive Plaintiffs of Their Civil Rights**

103.

The allegations contained in Paragraphs 1 through 102 above are reincorporated herein by reference.

104.

Defendants conspired for the purpose of depriving Plaintiffs of equal protection of the laws, and to deprive Plaintiffs of equal privileges under the laws through their plan to intentionally discriminate against Plaintiffs on account of Plaintiffs' race.

105.

Two or more Defendants did agree to directly or indirectly deprive Plaintiffs because of their race of their equal protection of the laws and equal privileges of the laws.

106.

Defendants did act to further the object of the conspiracy by taking steps to intentionally discriminate against Plaintiffs on the basis of their race.

107.

Defendants' acts in furtherance of their conspiracy caused Plaintiffs to suffer injuries for which they are entitled to recover.

108.

Plaintiffs have suffered economic and other damages for which they are entitled to recover.

109.

Defendants acted with malice and reckless indifference to Plaintiffs' federally protected rights, for which punitive damages should be assessed against Defendants.

**COUNT IV**

**Retaliation**

110.

The allegations contained in Paragraphs 1 through 109 above are incorporated herein by reference.

111.

Plaintiff Lowe engaged in statutorily and constitutionally protected activity by complaining in good faith about the illegal race discrimination perpetrated by Defendants and by refusing to participate in Defendants discrimination.

112.

Defendants retaliated against Plaintiff Lowe by taking adverse employment actions against him because he engaged in statutorily and constitutionally protected activity in violation of 42 U.S.C. § 1981 as enforced by 42 U.S.C. § 1983.

113.

Plaintiff Lowe has suffered damages as a proximate result of Defendants' retaliation against them, for which he is entitled to recover.

**COUNT V**

**42 U.S.C. § 1983 Violation of First Amendment Rights**

114.

The allegations contained in Paragraphs 1 through 113 above are incorporated herein by reference.

115.

At all times relevant to this Complaint, Defendants were acting under the color of state law.

116.

Defendants while acting under color of state law as officials for DeKalb County intentionally violated Plaintiff Lowe's constitutional rights under the First Amendment to the United States Constitution by taking adverse employment actions against Plaintiffs for exercising their right of free speech.

117.

Plaintiff Lowe spoke out on a matter of public concern by voicing his concerns about intentional race discrimination being perpetrated by the Jones' administration and Defendants.

118.

Defendants' intentionally retaliated against Plaintiff Lowe for speaking out on matters of public concern by taking adverse employment actions against him.

119.

Defendants' conduct was done with malice and reckless indifference to Plaintiff Lowe's federally protected rights.

120.

Defendants' actions violated the rights of Plaintiff Lowe protected by 42 U.S.C. § 1983, and the First and Fourteenth Amendments of the United States Constitution, and proximately caused Plaintiff Lowe to suffer damages.

121.

Plaintiff Lowe has suffered, and is entitled to recover compensatory, punitive and all other damages permitted by law against Defendants for their violations.

**COUNT VI**

**42 U.S.C. § 1988 -- Attorney's Fees**

122.

The allegations contained in Paragraphs 1 through 121 above are incorporated herein by reference.

123.

Because Defendants violated Plaintiffs' rights protected by 42 U.S.C. § 1983, 42 U.S.C. § 1981, 42 U.S.C. § 1985, 42 U.S.C. § 2000(e) et seq., and the United States Constitution, Plaintiffs are entitled to recover their attorneys' fees and

expenses as provided by 42 U.S.C. § 1988 and other relevant federal statutes.

WHEREFORE Plaintiffs pray that this Court:

(a) Declare that Defendants' actions, policies and practices complained of herein violate the rights of Plaintiffs as secured by 42 U.S.C. § 1983; 42 U.S.C. § 1981; 42 U.S.C. § 2000(e) et seq., and 42 U.S.C. § 1985;

(b) Award Plaintiffs compensatory and punitive damages for Defendants' intentional race discrimination and other civil rights violations against Plaintiffs;

(c) Award Plaintiffs' attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

(d) Grant Plaintiffs a trial by jury; and

(e) Award Plaintiffs any additional relief that this Court deems appropriate.

Respectfully submitted this 23d day of August, 2004.

Michael J. Bowers
Georgia State Bar No. 071650
J. Tom Morgan
Georgia State Bar No. 522675
Christopher Anulewicz
Georgia State Bar No. 020914
Gregory A. Bailey
Georgia Bar No. 032070

**BALCH & BINGHAM, LLP**
Fourteen Piedmont Center, Suite 1100
3535 Piedmont Road, N.E.
Atlanta, Georgia 30305
Telephone: (404) 261-6020
Facsimile: (404) 261-3656

Attorneys for Plaintiffs