**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **MICHAEL BRYANT, JOHN DRAKE, BECKY KELLEY and HERBERT LOWE,** | |
| **Plaintiffs,** | |
| **v.** | **1:04-cv-2462-WSD** |
| **VERNON JONES, MARILYN BOYD DREW, MORRIS WILLIAMS, RICHARD STOGNER and JOE STONE in their individual capacities and in their official capacities,** | |
| **Defendants.** | |

## ORDER

This is an employment discrimination case in which Plaintiffs allege they were discriminated against on account of their race or retaliated against because of complaints regarding alleged race discrimination.  It is before the Court on a variety of motions, each of which is discussed below.

### A.    Defendants Jones and Stogner's Motion to Strike Affidavit of Eddie Moody [116]

Defendants Jones and Stogner move the Court to strike the affidavit of Eddie

Moody filed in connection with Defendant Jones's Motion for Protective Order

[81] and the hearing held on the motion on April 27, 2005.  They argue the affidavit

should be stricken because (a) the Court at the hearing determined that it would not

consider the affidavit; (b) the affidavit was not timely filed in support of Plaintiffs'

opposition to the Motion for Protective Order; and (c) it was filed in a

manner not contemplated by the Federal Rules of Civil Procedure.  (Def. Jones and

Stogner's Mem. in Supp. of Mot. to Strike Moody Aff. at 3-7.)  Rule 12(f) governs

motions to strike, and provides that "the court may order stricken from any

pleading any insufficient defense or any redundant, immaterial, impertinent, or

scandalous matter."  Fed. R. Civ. P. 12(f).  Having reviewed the affidavit, as well

as the arguments set out by Defendants Jones and Stogner in their motion, the

Court finds that Defendants fail to show sufficient grounds for striking the affidavit

from the record under Rule 12(f).  Accordingly, their Motion to Strike the Affidavit

of Eddie Moody is DENIED.

**B.   Plaintiffs' Motion to Quash Defendant Jones's Subpoena to
        WSB-TV [132]**

Plaintiffs move the Court to quash the subpoena served on non-party

WSB-TV by Defendants.  The subpoena in question was served on non-party

WSB-TV on May 2, 2006.  Defendant Jones in his response to Plaintiffs' motion to quash states that WSB-TV complied with the subpoena on May 15, 2006, one day before Plaintiffs' motion was filed.  (Def. Jones's Resp. to Pls.' Mot. to Quash [138] at 3.)  Accordingly, Plaintiffs' Motion to Quash Defendant Jones's Subpoena to WSB-TV is DENIED AS MOOT.[1]

### C.   Defendant Jones's Motion to Withdraw Motion to Place Deposition Under Seal as Moot and Motion for Imposition of Sanctions [137]

On April 22, 2005, Defendant Jones filed his Reply in Support of Motion for Protective Order and Motion to Place His Deposition Under Seal [101].  On May 2, 2005, the Court entered a verbal order granting in part and denying in part Defendant Jones's Motion for Protective Order.  The Court expressly reserved ruling on Defendant Jones's request that his deposition be placed under seal. Following Defendant Jones's May 10, 2005 deposition, and prior to the Court ruling on the request to place his deposition under seal, counsel for Plaintiffs provided a videotape of the deposition to WSB-TV.  Defendant Jones now moves

---

[1]  Even if not mooted by WSB-TV's compliance, the Court finds the subpoena did not constitute an untimely attempt to obtain discovery and that Plaintiffs fail to demonstrate sufficient grounds for quashing the subpoena under Rule 45 of the Federal Rules of Civil Procedure.

to withdraw as moot his request to place his deposition under seal, and requests the Court to admonish Plaintiffs' counsel that the release of the videotape was improper in light of Defendant Jones's pending request.  (Def. Jones's Mem. in Supp. of Mot. to Withdraw at 4-6.)

Although counsel for Plaintiffs dismisses Defendant Jones's motion as a "personal attack" having "no factual or legal basis," they do not dispute that they provided a videotape of the deposition to WSB-TV before the Court ruled on the pending motion to place the deposition under seal.  (Pls.' Resp. to Def. Jones's Mot. to Withdraw [141] at 2-3.)  In doing so, counsel unilaterally removed from the Court's consideration an issue on which it explicitly reserved ruling until after the deposition was taken.  The Court does not dispute the right of counsel in civil cases to provide information and documents to the media where no order or rule prohibits the disclosure.  But here Plaintiffs' counsel subverted the Court's authority by releasing the videotape before the Court could prohibit it, if the Court determined that was the proper response to the pending motion.

In their response to Defendant Jones's motion, Plaintiffs' counsel defends their decision to disclose the videotape on the ground that the disclosure was necessary to persuade WSB-TV to provide counsel with previously unaired

footage of Defendant Jones.  (Pls.' Resp. to Def. Jones's Mot. to Withdraw at 2 n.2.)  Plaintiffs' counsel states that the unaired footage shows Defendant Jones making statements contradictory to his sworn deposition testimony, and that WSB-TV refused to voluntarily provide a copy of its unaired footage to counsel unless it was given a copy of the deposition videotape in exchange.  (Id.)

This candid admission of Plaintiffs' counsel's litigating tactics is, to say the least, disturbing.  It is clear that Plaintiffs' counsel in this case was presented with a choice of either pursuing voluntary production of footage from WSB-TV or abiding by their obligation to the Court to refrain from disclosing the videotape until the Court ruled on Defendants' request.  Regrettably, and in the Court's view, irresponsibly, counsel chose the former.  What's worse, the dilemma with which Plaintiffs' counsel alleges they were confronted -- disclose the videotape or else fail to obtain the unaired footage -- was imaginary or contrived.  Counsel had at their disposal a number of tools to obtain the unaired footage from WSB-TV notwithstanding their lack of willingness to provide it voluntarily, the most obvious of which is a Rule 45 subpoena.  That these tools would not have provided Plaintiffs' counsel with the unaired footage as quickly or easily does not excuse their decision to ignore their professional obligations to the Court, and the justice

5

system generally, in favor of horse-trading discovery with WSB-TV.

Plaintiffs' counsel's decision to disclose the videotape of the deposition in these circumstances constituted, at a minimum, a serious, distorted judgment. The proper course here would have been to delay disclosure until after the Court ruled on Defendant Jones's pending request, or, at the very least, to seek the Court's guidance prior to disclosure.

> **D.** **Plaintiffs' Motion to Strike Defendants' Answers and for Other Sanctions and, in the Alternative, Motion to Reopen Discovery and Stay Consideration of Defendants' Motions for Summary Judgment [219]**

On January 23, 2006, Plaintiffs moved the Court to sanction Defendants by striking their answers to the Complaint and entering judgment in Plaintiffs' favor on their claims for employment discrimination and retaliation ("Pls.' Mot. to Strike Defs.' Answers"). In the alternative, Plaintiffs request the Court to reopen discovery to permit inquiry regarding recently discovered evidence and evidence which Plaintiffs contend was unfairly withheld in this case. The Court shall address

each of these requests in turn.[2] [3]

       1.    <u>Plaintiffs' Request for Sanctions</u>

Plaintiffs argue that the sanction of striking Defendants' answers to the Complaint is warranted because of Defendants' alleged willful obstruction of discovery. (Pls.' Br. in Supp. of Mot. to Strike Defs.' Answers at 5-13.) Specifically, Plaintiffs allege that (1) in a previously filed Georgia Open Records Act proceeding, representatives for DeKalb County did not accurately represent to Plaintiffs' counsel the County's ability to retrieve and compile certain employee demographic information in electronic form; and that (2) Defendants mislead Plaintiffs' counsel and the Court in this case regarding their ability to retrieve this same information. (<u>Id.</u>) To support their motion, Plaintiffs rely on the affidavits of DeKalb County employees Michael Amato and Shae Robinson, and on the affidavit of Plaintiffs' counsel. (<u>Id.</u> at Exs. A, B, C.)

---

[2] Plaintiffs' Motion for Oral Argument [220] in connection with their Motion to Strike Defendants' Answers is DENIED.

[3] Plaintiffs filed their Motion to Strike Defendants' Answers on January 23, 2006. That same day, Plaintiffs filed a second Motion to Strike Defendants' Answers [221]. This second motion is identical to the first motion (absent exhibits), and appears to have been filed in error. Accordingly, Plaintiffs' second Motion to Strike Defendants' Answers is DENIED.

The Court is not persuaded that sanctions are warranted on these alleged claims.  As an initial matter, the Court declines to consider argument and evidence related to Plaintiffs' Open Records Act request or the Open Records Act proceeding between Plaintiffs' counsel and DeKalb County representatives in the Superior Court of DeKalb County.  Whether and to what extent County representatives involved in this proceeding withheld information or misrepresented the ease with which this information could be retrieved using County software is a matter for resolution by the state court which presided over that proceeding.  The Court will not consider those portions of the affidavits that address the Open Records Act proceedings or communications between DeKalb County officials concerning those proceedings.[4] [5]

_____

[4] Evidence and argument regarding the correspondence between the parties related to Plaintiffs' Open Records Act request (i.e., the request and the County's response to it), along with Mr. Amato's testimony concerning the PeopleSoft software, is relevant to Plaintiffs' request that the Court reopen discovery.  Plaintiff argues that the County's response to his Open Records Act request incorrectly advised that certain electronic employee demographic data could not be easily retrieved, and that he relied on this advisement in determining what information to request in the case before this Court.  (Pls.' Reply in Supp. of Mot. to Strike Defs.' Answers [232] at 7-8.)  Because the Court finds that the evidence of the parties' correspondence and Mr. Amato's testimony concerning the PeopleSoft software's capabilities -- as opposed to his testimony concerning communications with DeKalb County representatives -- does not implicate attorney-client privilege

With respect to Defendants' conduct alleged here, the Court finds Plaintiffs have failed to demonstrate that sanctions are warranted. Rule 37 of the Federal Rules of Civil Procedure provides that a court may impose sanctions where a party fails to obey an order to provide or permit discovery. Fed. R. Civ. P. 37(b)(2). Plaintiffs do not cite the Court to a discovery order with which they allege Defendants failed to comply. Instead, they argue Defendants and their counsel

_____

issues, this evidence will be considered in connection with Plaintiffs' request to reopen discovery.

[5] Defendants have moved to strike the Amato, Robinson and Morgan affidavits on the ground that they disclose communications protected by the attorney-client privilege. (Defs.' Br. in Supp. of Mot. to Strike Affs. [228] at 7-13.) The communications at issue were between DeKalb County employees and a DeKalb County attorney and concerned the appropriate response to Plaintiffs' counsel's Open Records Act request. (Id. at 8-10.) The Court already has determined that the Open Records Act proceedings will not be considered with respect to the issue of sanctions. Because these communications are not relevant to the Court's analysis, and because a determination of whether they are protected by the attorney-client privilege would further delay these proceedings, the Court in an abundance of caution will strike Plaintiffs' Motion to Strike Defendants' Answers and the attached affidavits of Amato, Robinson and Morgan from the docket. The Court has not considered the materials requested by Defendants to be filed under seal in connection with their motion to strike the Amato, Robinson and Morgan affidavits, and their Motion to Permit the Filing of Declarations Under Seal [224] is DENIED AS MOOT. Finally, counsel for the parties each request the other to be sanctioned for alleged violations of the Georgia Rules of Professional Conduct. If either counsel believes a violation of the Georgia Rules of Professional Conduct has occurred, and wishes to pursue this matter further, he or she may file an appropriate complaint with the State Bar of Georgia.

were not forthcoming regarding their ability to retrieve certain electronic employee data in their responses to written discovery and their statements to the Court during an April 27, 2005 hearing.  (Pls.' Br. in Supp. of Mot. to Strike Defs. Answers at 10-13.)

The Court has reviewed the written discovery requests, the correspondence between the parties, and, most importantly, the transcript of the April 27, 2005 hearing.  These materials do not evidence misconduct or misrepresentations in this Court on the part of Defendants.  It is clear from the Court's review of these materials that the focus of the parties' dispute concerned the proper scope of the document production sought by Plaintiffs; specifically, whether Plaintiffs could show a sufficient factual predicate to expand discovery beyond the relevant employment unit -- the Parks and Recreation Department -- to encompass County-wide employee demographic data.[6]  Defendants did not make any representations concerning their ability to retrieve and summarize the employee demographic information sought by Plaintiffs using the County's PeopleSoft software, and

_____

[6] Plaintiffs do not challenge defense counsel's representation that County-wide personnel file information, as it currently exists in document form, constitutes several hundred boxes of documents.

Plaintiffs did not expressly raise this issue in their written discovery requests or in the hearing.  Plaintiffs' counsel argues that his failure to raise this issue at the hearing is the result of his incorrect belief that employee demographic information could not be easily retrieved using the PeopleSoft software -- a belief he argues was the direct result of the DeKalb County representatives' alleged misrepresentations during the Open Records Act proceedings.  (Pls.' Reply in Supp. of Mot. to Strike Defs.' Answers at 7-8.)  Whatever the merits of this argument, it is not sufficient to demonstrate that sanctions are warranted based on Defendants' conduct in this case.[7]

### 2.   Plaintiffs' Request to Reopen Discovery

Having concluded that sanctions are not appropriate, the Court considers Plaintiffs' request that the Court reopen discovery to permit additional discovery

---

[7]  Plaintiffs in their reply brief argue that they did specifically raise the issue of the PeopleSoft-generated reports in their written discovery, citing language from their motion to compel arguing that "any documents or communications which speak to the County's policy on diversity and affirmative action under the Jones administration are relevant to Plaintiffs' claim that Defendants tried to rid DeKalb County of all upper level white employees."  (Pls.' Reply in Supp. of Mot. to Strike Defs.' Answers at 5) (citations omitted).  This argument is without merit.  The cited language is drawn from a brief, not a discovery request, is overly broad and vague, and refers to existing documents rather than data compilations which Plaintiffs contend can be produced using Defendants' software.

regarding employment decisions outside of the Parks and Recreation Department. In seeking this additional discovery, Plaintiffs rely on the arguments and evidence submitted in support of their request for sanctions, as well as evidence of a tape-recorded conversation between Defendants Stone and Williams.[8]

The Court carefully has reviewed the arguments of counsel for Defendants at the April 27, 2005 discovery hearing, along with the submissions of the parties on the current motions.  The Court scrutinized most closely the tape-recorded conversation between Defendants Stone and Williams, which involves a proposed promotion of several white employees within the DeKalb County Fire and Rescue Department.[9]  The Court has reviewed the transcript of the recording and has listened to the copy of it filed with the Court.  Although the precise implication of

---

[8] This evidence was not made available to Plaintiffs until after the close of discovery in this case.

[9] Defendants Stone and Williams's conversation was recorded by Mr. Amato's voicemail, presumably as a result of one of these Defendants having inadvertently dialed Mr. Amato's telephone number during their conversation.  That the conversation was a candid discussion of the promotion decision and was not intended to be overheard by others is apparent from the tone and language used by Defendants Stone and Williams, as well as because at approximately two and a half minutes into the recording, Defendant Stone tells Defendant Williams to stop talking because he is uncertain whether someone is approaching his office.

the conversation is difficult to pinpoint,[10] the recording gives the Court a glimpse

into the conduct of Defendants in this case which suggest two things to the Court.

First, Defendants Stone and Williams's comments provide an evidentiary

basis that hiring decisions throughout various DeKalb County departments may be

influenced by the preferences or policies of senior County officials.  Second, the

recording suggests that when lower-level officials act inconsistently with those

preferences or policies there may be an enforcement mechanism in place to

confront those who make decisions independent of the preferences and policies set

by senior officials.  The tone, language and content of Defendant Stone's remarks

on the recording raise in the Court's mind a troubling question regarding how hiring

decisions are made, how they are reviewed and scrutinized by senior County

management and the impact of that process on the employment decisionmaking in

the County.  That the content of this conversation may be relevant to the issues in

this litigation is underscored by the fact that at one point during the conversation, in

_____

[10] The Court is uncertain whether the unintelligible contents of the tape recording can be made clear using available audio enhancement technology.  It does not appear such efforts have been made with respect to the version of the recording filed with the Court.  As such, the Court has endeavored to listen closely to the recording to discern as much of Stone and Williams's conversation as possible.

discussing Defendant Jones's alleged communication with Mr. Foster concerning the promotion decision, Defendant Williams uses the phrase "racial discrimination."[11]

The Court does not reach any conclusions regarding the existence or effect of any preferences, policies or accountability mechanisms that may be in place in the County.  Rather, it simply believes the recorded conversation is a sufficient basis to allow additional discovery into hiring practices and influences beyond the Parks and Recreation Department to determine if broader polices and practices affected the unit at issue.  <u>See generally</u> Fed. R. Civ. P. 26(b) ("Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . .").  Accordingly, the Court directs as follows:

- The parties in this case may conduct limited, additional discovery commencing on March 22, 2006, and ending on May 31, 2006.

- Discovery during this period should be confined to discovery regarding the tape-recorded conversation and the employment decisions discussed in that conversation, as well as written discovery

––––––––––––––––––––

[11]  The transcription of the recording filed with the Court does not reflect Defendant Williams's use of this phrase.  It was discovered by the Court upon close review of the recording, and occurs approximately three minutes and twenty seconds into the recording.  Defendant Williams's comments before and after this phrase are unintelligible.

14

concerning County-wide employment demographics for the years 2000 and beyond, including but not limited to a request for Defendants to produce the PeopleSoft-generated summaries requested by Plaintiffs in the Open Records Act proceedings.

• The parties are to confer and, on or before March 20, 2006, submit to the Court a detailed plan for the discovery to be conducted during this period. The plan should include a detailed description of the written discovery to be served, the specific witnesses sought to be deposed, and proposed dates for these depositions to be conducted.

• In the event disputes arise regarding the proper scope of this limited, additional discovery, the parties shall advise the undersigned's courtroom deputy as well as file a joint statement of the dispute and request for hearing with the Court. The Court will review the matter and either issue a ruling or set down the matter for a hearing.

**E.   The Pending Motions for Summary Judgment**

On June 1, 2006, Defendants moved for summary judgment on the claims asserted against them by Plaintiffs. Instead of a consolidated summary judgment motion, each of the five Defendants filed separate summary judgment motions and briefs with respect to each of Plaintiffs, resulting in the filing of a total of fourteen (14) motions and briefs [142, 143, 144, 145, 146, 147, 148, 149, 150, 152, 153, 154, 155, 156].[12] Each of these briefs is substantial in length, equaling or nearly

---

[12] Defendants did file a single Joint Statement of Undisputed Material Facts in Support of Their Motions for Summary Judgment [151].

equaling the 25-page limit provided by the Local Rules, and a number of them incorporate entire sections of other summary judgment briefs.  (See, e.g., Def. Jones's Br. in Supp. of Mot. for Summ. J. as to Pl. Drake [148] at 11) (incorporating Section III.D.1 of Def. Stogner's Br. in Supp. of Mot. for Summ. J. as to Pl. Drake).  Plaintiffs filed consolidated responses to Defendants' motions [182, 183].  Again, instead of consolidated reply briefs, Defendants elected to file individual reply briefs [189, 190, 191, 192, 193, 195, 196, 197, 198, 199, 200, 201], each of which was substantial in length, and a number of which incorporate entire sections of other reply briefs.  (See, e.g., Def. Jones's Reply Br. in Supp. of Mot. for Summ. J. as to Pl. Bryant [198] at 7) (incorporating Section II.B.1 of Def. Drew's Reply Br. in Supp. of Mot. for Summ. J. as to Pl. Bryant).  Finally, after briefing on Defendants' summary judgment motions was complete, the parties each filed motions requesting the Court to consider certain supplemental case authority issued by the Eleventh Circuit and the Supreme Court after their briefs were filed. (See Pls.' Mot. to Consider Supplemental Authority [206]; Pls.' Am. Mot. to Consider Supplemental Authority [207]; Defs.' Mot. to Consider Supplemental Authority [217].)  These requests included a volley of arguments on what impact, if any, the case authority issued by these courts have on the summary judgment

16

arguments made by the parties in this case.

Plaintiffs object to the manner in which Defendants' summary judgment arguments were presented to the Court.  Specifically, Plaintiffs argue that Local Rule 7.1(D) permits each group of Defendants -- "grouped" by the counsel representing them -- to file only one (1) summary judgment brief totaling twenty-five (25) pages, absent prior permission of the Court.  (Pls.' Mot. to Enforce Local Rule 7.1(D) and Mot. for Expedited Consideration [140] at 2-3.)  Under this interpretation, Defendants were limited to three (3) summary judgment briefs.

Local Rule 7.1(D) provides that "[a]bsent prior permission of the court, briefs filed in support of a motion or in response to a motion are limited in length to twenty-five (25) pages."  L.R. 7.1(D), N.D. Ga.  The Court does not view this rule as prohibiting each individual defendant in a case from filing a separate motion for summary judgment.  However, the manner in which the summary judgment motions in this case were filed and the manner in which the arguments set forth therein were cross-referenced and incorporated among other briefs unnecessarily complicates the summary judgment proceedings.  This structuring of summary judgment briefing makes it more difficult for the parties, and the Court, to discern the issues which must be resolved in order to process the case to a resolution.  Moreover,

17

when a party incorporates by reference an entire section of another brief, it is the

Court's position that the incorporated section should count against the 25-page and

15-page limits set out in Local Rule 7.1(D).  In several instances, Defendants'

incorporation of other brief sections in their initial briefs and reply briefs extend

their briefs well beyond the page limits provided by Local Rule 7.1(D).  Added to

this already complicated web of arguments is the additional case authority, and

arguments concerning that authority, which the parties submitted in August and

November 2005.

Having concluded that limited, additional discovery in this case is warranted,

the Court now must determine the proper mechanism for incorporating the

evidence obtained and arguments developed during this additional discovery into

the existing summary judgment proceedings.  Considering the already muddled

state of the summary judgment briefing, the Court finds that requiring the parties to

file still more supplemental briefs, supplemental statements of disputed and

undisputed facts and supporting documents, and supplemental affidavits and

declarations, would only further complicate these proceedings.  Instead, the Court

here enacts a summary judgment mechanism that allows for the full and complete

discussion of the facts and arguments at issue in this case, but also accommodates

18

the parties' and the Court's need for an efficient and coherent presentation of these issues. To that end, the Court directs as follows:

- Renewed motions for summary judgment in this case shall be filed on or before June 21, 2006.

- Each Defendant shall be permitted to file a single motion for summary judgment and brief in support thereof which addresses the claims asserted against him or her by all Plaintiffs, resulting in a total of four (4) summary judgment motions and briefs by Defendants. Plaintiff shall respond separately to each motion, and Defendants each shall file a reply brief in support of their motions, resulting in a total of four (4) reply briefs.

- The page limits for these briefs are as follows: 45 pages per initial summary judgment brief, 35 pages per response; and 20 pages per reply. The deadlines for the filing of response and reply briefs are the same as those set out in the Local Rules.

- As with their previous briefing, Defendants shall file a single, joint statement of undisputed material facts in support of their motions for summary judgment. If Plaintiffs wish to file a statement of material facts as to which they contend there are genuine issues to be tried, they shall file a single, joint statement of such facts.

In view of the Court's decision to permit limited, additional discovery, and to provide for a new round of summary judgment briefing following the close of this additional discovery, Defendants' pending motions for summary judgment are DENIED. In addition, because the case authority cited by the parties can be addressed in their renewed motions for summary judgment and responses in

opposition to them following the close of the limited discovery period described
above, the parties' requests for the Court to consider this supplemental authority
are DENIED AS MOOT.

### F.      Conclusion

Finally, the Court notes its concern about the manner in which this case is
being litigated.  This is not routine litigation involving routine parties or counsel.  On
each side are lawyers and litigants who should be aware of and guided by the fact
that this case involves the expenditure and exposure of public funds and claims
which affect the performance of public duties by public officials.  On each side are
people who are aware that this matter requires each party and their lawyers to
litigate in a way that promotes fairness, justice, respects the private and public
reputations of people and ultimately results in the disclosure of true facts upon
which a just result may be based.  The Court urges the parties and their counsel to
consider these responsibilities and objectives as this litigation proceeds.  During
this process the Court will keep a watchful eye on the progress of the case so that
justice, and not the litigants' or their lawyers' self-interests, is served.

For the reasons stated above,

**IT IS HEREBY ORDERED** that Defendants Jones and Stogner's Motion

to Strike Affidavit of Eddie Moody [116], Plaintiffs' Motion for Oral Argument

[220], and Plaintiffs' second Motion to Strike Defendants' Answers and for Other

Sanctions and, in the Alternative, Motion to Reopen Discovery and Stay

Consideration of Defendants' Motions for Summary Judgment [221] are

**DENIED**, and that Plaintiffs' Motion to Quash Defendant Jones's Subpoena to

WSB-TV [132] and Defendants' Motion to Permit the Filing of Declarations Under

Seal [224] are **DENIED AS MOOT**.

      **IT IS FURTHER ORDERED** that Defendant Jones's Motion to

Withdraw Motion to Place Deposition Under Seal as Moot and Motion for

Imposition of Sanctions [137] and Defendants' Motion to Strike the Affidavits of

Michael Amato, Shae Robinson and J. Tom Morgan [228] are **GRANTED**.  The

Clerk is directed to strike Plaintiffs' motion and related filings [219, 221, 223].

With respect to Plaintiffs' Notice of Filing [222], the Clerk is directed to strike this

pleading but re-file the Notice of Filing itself (a four-page document), along with the

original of the DVD recording attached to the Amato Affidavit as Exhibit A.  The

affidavits themselves and the other materials attached to the Notice of Filing shall

remain stricken and shall not be re-filed by the Clerk.  To preserve the

completeness of the record, Plaintiffs are directed to file on or before March 22, 2006, redacted copies of these stricken materials [219, 221, 222, 223] which do not include or reference the alleged attorney-client communications cited by Defendants.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Strike Defendants' Answers and for Other Sanctions and, in the Alternative, Motion to Reopen Discovery and Stay Consideration of Defendants' Motions for Summary Judgment [219] is **GRANTED IN PART** and **DENIED IN PART**.  The parties shall proceed with the limited, additional discovery and renewed summary judgment briefing schedule set out in Sections D and E above.

**IT IS FURTHER ORDERED** that, in view of the Court's rulings regarding additional discovery and renewed summary judgment briefing, Defendants' motions for summary judgment [142, 143, 144, 145, 146, 147, 148, 149, 150, 152, 153, 154, 155, 156] are **DENIED**.  Plaintiffs' Motion to Enforce Local Rule 7.1(D) and for Expedited Consideration [140] and the parties' motions to consider supplemental case authority [206, 207, 217] are **DENIED AS MOOT**.

**SO ORDERED**, this 10th day of March, 2006.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE