**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **MICHAEL BRYANT, JOHN DRAKE, BECKY KELLEY, AND HERBERT LOWE** | |
| **Plaintiffs,** | |
| **v.** | **1:04-cv-2462-WSD** |
| **VERNON JONES, MARILYN BOYD DREW, MORRIS WILLIAMS, RICHARD STOGNER, and JOE STONE in their individual capacities and in their official capacities,** | |
| **Defendants.** | |

## OPINION AND ORDER

This matter is before the Court on Plaintiffs Michael Bryant, John Drake, and Becky Kelley's Motion for Reconsideration [354] (the "Motion for Reconsideration") of the District Court's November 21, 2006 Opinion and Order on Defendants' Renewed Motions for Summary Judgment [303] (the "November 21, 2006 Order"), and on Kristy Bryant Yule's Motion to Substitute Plaintiff Michael Bryant with Kristy Bryant Yule, Temporary Administrator of the Estate of Michael Bryant [397].

## I. BACKGROUND

This action arises from allegedly racially-discriminatory policies and actions by employees of DeKalb County.[1] Plaintiffs Michael Bryant ("Bryant"),[2] John Drake ("Drake"), Becky Kelley's ("Kelley") and Herbert Lowe's ("Lowe") Complaint alleges, among other causes of action, violations of 42 U.S.C. § 1981, as enforced by 42 U.S.C. § 1983. (Compl. ¶ 100.) It is well-settled that in cases involving claims against government defendants, § 1983 is the exclusive damages remedy for the violation of rights guaranteed by § 1981. Butts v. County of Volusia, 222 F.3d 891, 893 (11th Cir. 2000).

Section 1981 provides, in part:

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined

---

[1] The November 21, 2006 Order contains a detailed discussion of the facts of this case that need not be repeated here.

[2] Michael Bryant died on February 4, 2010. Kristy Yule has moved the Court to substitute her as a plaintiff in her capacity as Temporary Administrator of the Estate of Michael Bryant. Defendants do not oppose the substitution. The Court GRANTS Kristy Bryant Yule's Motion for Substitution.

> For purposes of this section, the term "make and enforce contracts"
> includes the making, performance, modification, and termination of
> contracts, and the enjoyment of all benefits, privileges, terms, and
> conditions of the contractual relationship.

Section 1981 was amended to its present form in 1991, when Congress passed the

Civil Rights Act of 1991 (the "1991 Act"). Section 101 of the Act amended

§ 1981 by adding § 1981(b). The amendment permits employees to bring

employment actions, such as those for discrimination, harassment, and retaliation,

based on existing employment relationships.

Just prior to the enactment of the 1991 Act, Congress passed 28 U.S.C.

§ 1658 which provided a catchall four-year statute of limitations for actions arising

under federal statutes enacted after December 1, 1990, which do not have statute of

limitations provisions. Palmer v. Stewart County Sch. Dist., 178 F. App'x. 999,

1002-03 (11th Cir. 2006) (citing 29 U.S.C. § 1658 and Jones v. R.R. Donnelley &

Sons Co., 541 U.S. 369, 371 (2004)). Neither § 1981 nor § 1983 have statute of

limitations provisions. In the absence of a limitations period in § 1983, our Circuit

has held that the statute of limitations for § 1983 claims[3] is the Georgia state statute

of limitations for claims related to injuries to a person, which is two years.

Williams v. City of Atlanta, 794 F.2d 624, 626 (11th Cir. 1986); see also O.C.G.A.

§ 9-3-33. Our Circuit had not addressed what limitations period applied to § 1981

---

[3] Section 1983 was not amended or enacted after December 1, 1990

claims enabled by the 1991 Act and brought against a government defendant under § 1983 when the Court entered its summary judgment Opinion and Order in this case

In June 2006, the Defendants each moved for summary judgment. In these motions, the Defendants argued that Bryant, Kelley and Drake's § 1981 discriminatory transfer claims, Drake's § 1981 failure to promote claim, and Kelley's § 1981 hostile work environment claim were untimely because they were brought through § 1983, which has a two year statute of limitations.[4] Plaintiffs argued in opposition that the statute of limitations for these § 1981 claims was four years based on 42 U.S.C. § 1658.[5]

On November 21, 2006, the Court issued its order on Defendants' summary judgment motions. In it, the Court discussed that the Eleventh Circuit had no published authority on this statute of limitations question. The Court then held that the two year statute of limitations applied to Plaintiffs' § 1981 claims brought under § 1983. Based upon this two year limitations period, summary judgment was granted on: (1) Bryant's § 1981 discriminatory reassignment or transfer claim

---

[4] These claims were largely based on Defendants' actions occurring in early 2002.

[5] Plaintiffs also asserted these same facts gave rise to § 1983 claims. Plaintiffs did not dispute that a two year statute of limitations applies to those claims asserting violations of § 1983. The Court finds that summary judgment is granted as to these claims as discussed in the November 21, 2006 Order.

brought against Defendants in their official capacities; (2) Kelley's § 1981 discriminatory reassignment or transfer claim brought against Defendants in their official capacities; (3) Drake's § 1981 discriminatory reassignment or transfer claim brought against Defendants in their official capacities; and (4) Drake's § 1981 failure to promote claim brought against Defendants in their official capacities (the "Dismissed Claims").[6]

On December 18, 2006, Defendants filed an interlocutory appeal based on the Court's denial of Defendants' qualified immunity defense. While the case was on appeal, the Eleventh Circuit addressed in <u>Baker v. Birmingham Board of Education</u>, 531 F.3d 1336 (11th Cir. 2008), which statute of limitations period applies for employment cases alleging § 1981 claims against government defendants. In <u>Baker</u>, the plaintiff brought race discrimination and retaliation claims under 42 U.S.C. § 1981, by and through 42 U.S.C. § 1983, for actions occurring during his employment with the Board of Education. The district court granted summary judgment for the Board of Education on the grounds that Baker's claims, which arose more than two years prior to filing suit, were untimely. Baker appealed and argued that a four year statute of limitations should apply.

---

[6] The Court denied summary judgment as to Kelley's § 1981 hostile work environment claim since it found that Kelley had alleged some harassing conduct occurred within two years of the filing of the complaint.

Noting the inconsistent decisions on this statute of limitations issue, the Eleventh Circuit held that the applicable statute of limitations for § 1981 claims, enabled by the 1991 Act and brought under § 1983 against government defendants, is four years.[7]

The case now has been remanded for trial following the Circuit's review of this Court's November 21, 2006 Opinion and Order.[8]  After remand, on December 22, 2009, Plaintiffs filed their Motion for Reconsideration, asserting that Baker constitutes an intervening change in the law requiring reconsideration of the November 21, 2006 Order on the issue of the statute of limitations to be applied to the Dismissed Claims.  Defendants opposed the Motion for Reconsideration on the grounds that it is untimely and procedurally defective.

## II.     MOTION FOR RECONSIDERATION

### A.     Standard For Reconsideration

A district court has the discretion to revise or reconsider interlocutory orders at any time before final judgment has been entered.  See Fed. R. Civ. P. 54(b); e.g., McCoy v. Macon Water Auth., 966 F. Supp. 1209, 1222 (M.D. Ga. 1997).  A motion for reconsideration generally is appropriate where there is: (1) newly

---

[7]  In Baker, the Eleventh Circuit reasons that where a statute enacted after 1990 made possible a claim that did not exist during or before 1990, 28 U.S.C. § 1658's four year limitations period applied to the after-1990 enabled claim.

[8]  Trial is set to begin on March 22, 2010.

discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact. <u>See, e.g.</u>, <u>Jersawitz v. People TV</u>, 71 F. Supp. 2d 1330, 1344 (N.D. Ga. 1999); <u>Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs</u>, 916 F. Supp. 1557, 1560 (N.D. Ga. 1995), <u>aff'd</u>, 87 F.3d 1242 (11th Cir. 1996)

B.     <u>The Baker Decision Requires Reconsideration of the November 21, 2006 Order</u>

Plaintiffs contend that the <u>Baker</u> decision constitutes an intervening change of law which compels reconsideration of the November 21, 2006 Order. The Court agrees. <u>Baker</u> established new Eleventh Circuit authority on this unsettled question of law. Reconsideration of the November 21, 2006 Order based on this new authority is appropriate.

Defendants do not dispute that <u>Baker</u> constituted an intervening change in the law. Defendants instead argue that the Motion for Reconsideration should be denied because it was not timely brought and because it is procedurally defective. These arguments are unconvincing.

The Motion for Reconsideration is timely. Under Rule 54(b) of the Federal Rules of Civil Procedure, a court may revise an interlocutory order prior to the entry of final judgment. Here, final judgment has not been entered, and the Motion for Reconsideration that the Court now considers was made promptly after this

action was remanded from the Eleventh Circuit after the appeal of the Court's November 21, 2006 Order was concluded. The Motion for Reconsideration is timely under Rule 54(b).[9]

The Motion for Reconsideration also does not suffer from any procedural defects. Defendants generally assert Plaintiffs should have been more specific in stating which claims they are asking the Court to reconsider. The Court finds that Plaintiffs have sufficiently identified the rulings to be reconsidered by requesting reconsideration of their § 1981 claims.[10]

## III.  RECONSIDERATION OF THE NOVEMBER 21, 2006 ORDER

Plaintiffs Bryant, Drake, and Kelley seek reconsideration of the Court's grant of summary judgment on:

> (1)  Bryant's § 1981 claim for discriminatory transfer or reassignment brought against Defendants in their official capacities;
>
> (2)  Kelley's § 1981 claim for discriminatory transfer or reassignment brought against Defendants in their official capacities;

---

[9]  Defendants assured the Court that they would not be prejudiced by a reconsideration of the November 21, 2006 Order and were prepared to proceed to trial as scheduled on March 22, 2010.

[10]  The Court finds that reconsideration is only required for the Dismissed Claims, which are the only claims affected by the Eleventh Circuit's decision in Baker.

(3)     Drake's § 1981 claim for discriminatory transfer or reassignment brought against Defendants in their official capacities; and

(4)     Drake's § 1981 claim for failure to promote brought against Defendants in their official capacities. [11]

The Court discusses the impact of Baker on each claim below. [12]

A.      Plaintiffs § 1981 Claims Are Timely

The Eleventh Circuit found, in Baker, that § 1981 claims asserted pursuant to the 1991 Act are governed by 28 U.S.C. § 1658's four-year statute of limitations. Defendants do not dispute that Bryant's discriminatory transfer claim, Drake's discriminatory transfer claim, and Kelley's discriminatory demotion and

---

[11]  In footnote 16 of the November 21, 2006 Order, the Court found:

> In response to Defendants' motions for summary judgment asking the Court to apply the two-year statute of limitations to all Plaintiffs' claims, Plaintiffs do not contend that they also assert § 1981 claims against Defendants in their individual capacities. In fact, they state that they bring their § 1981 claims through § 1983. Because Plaintiffs have abandoned this individual capacity argument, the Court does not consider whether those claims would be time-barred under the limitations period applicable to § 1981 actions.

Since Plaintiffs' § 1981 claims against Defendants in their individual capacities were dismissed as abandoned, and not dismissed based on the application of a two year statute of limitations, the Court only reconsiders its ruling on the Dismissed Claims to the extent they relate to Defendants in their official capacities.

[12]  In their briefs for the Motion for Reconsideration, the Parties make a number of arguments regarding the substantive merits of Plaintiffs' § 1981 claims in the event the claims are found to be timely under Baker. These argument are immaterial to whether reconsideration is appropriate based upon Baker and are not considered in connection with the motions for summary judgment.

hostile work environment claims are all claims asserted pursuant to the 1991 Act. Under Baker, a four year statute of limitations applies to these claims, and thus they are timely.

Defendants argue that Drake's failure to promote claim is subject to § 1981's two year statute of limitations because this cause of action was available before the enactment of 28 U.S.C. § 1658 and the 1991 Act. Before the 1991 Act, a failure to promote claim could be brought under § 1981 only if the promotion rose to the level of an "opportunity for a new and distinct relationship between the employee and the employer." Patterson, 491 U.S. 164, 186-86 (1989) (superseded by 42 U.S.C. § 1981 (1991)). The 1991 Act, which permits claims based on existing contracts, enabled a plaintiff to bring a failure to promote claim under § 1981(b) even where the promotion would not amount to a new and distinct relationship.

Defendants argue that Drake's failure to promote claim is subject to the two-year statute of limitations because his prospective promotion to Director of Parks and Recreation would have involved a sufficient change in the parties' employment relationship to constitute an opportunity to enter into a new contract with the employer. Defendants argue that this is a "new and distinct" relationship with the County, which was a cause of action allowed before the 1991 Act and thus

is not subject to § 1658's four year limitations period. Defendants' sole evidence to support its argument that this was a "new and distinct relationship" promotion is that the promotion would have moved Drake from a position that was covered by the County's merit system to a non-merit system position.

Plaintiffs contend that Drake's failure to promote claim arises under the 1991 Act since it would have modified Drake's employment with DeKalb County and did not create an entirely new and distinct relationship. Plaintiffs argue that the Director of Parks and Recreation position was a merit-system position at the time of the promotion.[13]

The Court finds that Defendants have not satisfied their burden to show that, as a matter of law, a promotion to Director of the Parks and Recreation Department would "rise[ ] to the level of an opportunity for a new and distinct relationship between the employer and the employee." Patterson, 491 U.S. at 166. Defendants have only shown a change from the merit system to the non-merit system. Defendants do not explain the impact of this change or demonstrate how it would significantly alter the relationship between the parties. "The court will not 'scour the record' to determine whether summary judgment is proper." See, e.g., Realty Partners, L.P. v. Taffarello, 561 F. Supp. 2d 659, 663 n.2 (E.D. Tex. 2007). The

---

[13] The Court finds that Plaintiffs have not presented any evidence to support this claim.

change from merit to non-merit, without more and without explanation, is not enough to show a new and distinct relationship.[14]  See, e.g., Williams v. National Railroad Passenger Corp., 716 F. Supp. 49, 51 (D.D.C. 1989) (it is not enough that a promotion merely provides an increase in pay); cf. Miller v. Swissre Holding, Inc., 731 F. Supp. 129, 131-132 (S.D.N.Y. 1990) (finding new and distinct relationship would have been created where Plaintiff demonstrated that promotion would have moved employee from non-exempt to exempt status, employer benefits would have changed, and the employee's duties would have changed).  Based on the record before the Court, the Defendants motion for summary judgment on the issue of whether Drake's failure to promote claim is time barred based on a two year statute of limitation is denied.  See, e.g., Nunez v. First Union Nat'l Bank of Fla., 996 F.2d 287, 289 (11th Cir. 1993) (denying summary judgment where dispute of material fact existed whether promotion would constitute new and distinct relationship).

Defendants next argue that even if the Dismissed Claims now are timely, they each fail as a matter of law.

---

[14]  A comparison of the two positions' job descriptions reveals nearly identical responsibilities.  (See Pl. Exs. 27 & 28.)

B.    Kelley, Bryant, and Drake's Discriminatory Transfer or Reassignment
       Claims

Plaintiffs Kelley, Bryant and Drake each assert that they were transferred or reassigned as a result of Defendants' discriminatory policies and that these reassignments constituted adverse employment actions. Section 1981, § 1983 and Title VII have the same proof requirements and use the same analytical framework. Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998); Sledge v. Goodyear Dunlop Tires N. Am., Ltd., 275 F.3d 1014, 1015 n.1 (11th Cir. 2001) (noting the same *prima facie* case and burden-shifting mechanisms apply to Title VII and § 1981 discrimination claims). A plaintiff seeking to establish intentional discrimination may do so using direct or circumstantial evidence. Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1085 (11th Cir. 2004).

1.    *Direct Evidence*

Plaintiffs assert that the various statements that Defendants made to Lowe constitute direct evidence that the transfers of Bryant, Kelley and Drake were discriminatory.[15] The Eleventh Circuit has defined direct evidence of discrimination as evidence that reflects "a discriminatory or retaliatory attitude correlating to the discrimination . . . complained of by the employee." Wilson, 376

---

[15] Whether these transfers are "adverse employment actions" sufficient to state a claim for discrimination is discussed below.

F.3d at 1086 (quoting Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1358 (11th Cir. 1999)) (internal quotation marks omitted).

The standard for showing "direct evidence is a stringent one and only the most blatant comments will serve to prove such intent." Early v. Champion Int'l Corp., 907 F.2d 1077, 1081-82 (11th Cir. 1990). The direct evidence must relate to the specific employment decision at issue without inference and presumption. EEOC v. Joe's Stone Crab, 220 F.3d 1263, 1286 (11th Cir. 2000). The Eleventh Circuit routinely has found there is no direct evidence of discrimination – even when there were seemingly blatant remarks – if discrimination is required to be proved by inference or presumption. See, e.g., Carter v. Three Springs Residential Treatment, 132 F.3d 635, 642 (11th Cir. 1998) (supervisor's statement that she had "a bias against blacks and found they were difficult for her to trust or get along with" did not constitute direct evidence of discrimination because the statement was susceptible to more than one interpretation and did not relate directly to the decision not to promote plaintiff); see also Damon, 196 F.3d at 1359 (no direct evidence in age discrimination case where the decision maker stated that "the company needed … young men … to be promoted.")

The testimony of Lowe may well establish direct evidence of discrimination regarding the reassignments. At issue are the transfers of Kelley and Drake, which

were implemented by an executive order drafted by Stogner and approved by Jones, and the reassignment of Bryant, which was ordered by Drew.[16]  Prior to these transfers, Kelley, Drake, Bryant occupied management positions within the County.  Lowe testified that Jones informed him of a plan to "darken" the administration by placing black individuals in management positions at the expense of white employees.  (Lowe Dep., at 380-81.)  He further stated that current white managers would not be directly fired but would be "reorganized," where they would be transferred to positions where they would be marginalized and set up to fail.  (Id. at 339, 353-355.)  Jones specifically stated that Drake, Bryant, and Kelley had been or would be reassigned as part of this plan.  (Id.)  Drew specifically told Lowe that Bryant was a target of this policy and that she wanted Bryant out of the Parks and Recreation Department.  (Id. at 140, 155, 514-15.)  These statements are evidence of a discriminatory intent by the final decision-makers[17] who carried out the reassignments.  No presumption or inference is necessary to connect this intent to the reassignments at issue.

Where direct evidence is present, summary judgment is not appropriate.

---

[16]  The Court also finds that Plaintiffs have presented sufficient evidence to create a question of fact whether Jones was also involved in the decision to transfer Bryant.

[17]  Defendants have not offered any evidence that these reassignments are subject to administrative review under the DeKalb County Code.

Brown v. Metro. Atlanta Rapid Transit Auth., 261 Fed. App'x 167, 172 (citing

Evans v. McClain of Georgia, Inc., 131 F.3d 957, 962 (11th Cir.1997) (If "a

plaintiff produces direct evidence of a discriminatory motive, and the trier of facts

accepts this testimony the ultimate issue of discrimination is proven.").[18]

    2.   *Circumstantial Evidence*

Even if Lowe's testimony is not direct evidence of discrimination it is

circumstantial evidence of discrimination.  To establish intentional discrimination

using circumstantial evidence, a plaintiff must use the framework established by

McDonnell Douglas.  Under this framework, the plaintiff must make a *prima facie*

case of discrimination with respect to the employment action in question.  Chapman

v. AI Transp., 229 F.3d 1012, 1024 (11th Cir. 2000).  If the plaintiff makes a *prima*

*facie* showing, the defendant must articulate a legitimate, non-discriminatory reason

for the adverse employment action.  Id.  The burden then shifts back to the plaintiff

to show defendant's legitimate, non-discriminatory reason is a pretext for unlawful

discrimination.  Id.

---

[18] To the extent that Defendants contend that they would have reached the same decision even if they had not taken race into account, a triable issue of fact exists based on Lowe's testimony.

a)    *Prima facie* analysis

To establish a prima facie case of discriminatory reassignment, a plaintiff must show that he or she 1) was a member of a protected class, 2) was qualified, and 3) suffered an adverse employment action.  Hinson v. Clinch County, Georgia Bd. of Educ., 231 F.3d 821, 828 (11th Cir. 2000).  An adverse employment action is a serious and material change in the terms, conditions, or privileges of employment.  See Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1239 (11th Cir. 2001).[19]

Defendants argue that the transfers alleged by Plaintiffs cannot be considered adverse employment actions and Plaintiffs are improperly second-guessing the County's legitimate business decisions.  A transfer to a different position can be "adverse" if it involves a reduction in pay, prestige or responsibility.  See Doe v. DeKalb County Sch. Dist., 145 F.3d 1441, 1448 (11th Cir.1998).  To evaluate whether a transfer or reassignment is adverse, the Eleventh Circuit has adopted an objective test, asking whether "a reasonable person in [the plaintiff's] position would view the employment action in question as adverse."  Id. at 1449.  This is generally an issue of fact.

Viewing the evidence in the light most favorable to Plaintiffs, a reasonable person could view Kelley's reassignment to manage the Greenspace Program as a

_____

[19]  Defendants do not assert that Bryant, Kelley or Drake are not members of a protected class or were not qualified.

discriminatory adverse employment action.  Kelley alleges that the decision to

reassign her was made by Stogner and ultimately approved by Jones.  Kelley has

also alleged facts that implicate Drew in this allegedly discriminatory adverse

employment action based on Drew's role in determining Kelley's job

responsibilities once the transfer took effect.[20]  While the reassignment did not

change Kelley's salary or benefits, it changed her reporting structure and allegedly

foreclosed any possibility of promotion or advancement within the County.  As part

of this reassignment, Drew attempted to move Kelley into a windowless office

which was used primarily for storage.  Kelley alleges that once she was reassigned,

her input was ignored and she was increasingly marginalized.  Kelley stated that her

job responsibilities ultimately amounted to "coloring maps."  A reasonable person

may conclude that Kelley's reassignment constituted a discriminatory adverse

employment action because it involved a substantial diminution of her prestige and

responsibility.  Hinson v. Clinch County, Ga. Bd. of Educ., 231 F.3d 821, 829 (11th

---

[20]  Bryant does not allege any facts demonstrating that Stone, Stoner, or Williams
were involved in making this decision.  Summary judgment is granted to Stone,
Stoner, and Williams on Bryant's official capacity § 1981 claim for discriminatory
reassignment.

Cir. 2000) ("a transfer to a different position can be 'adverse' if it involves a reduction in pay, prestige or responsibility.").[21]

Bryant has also alleged facts that are sufficient to lead a reasonable individual to conclude that he suffered a discriminatory adverse employment action. Bryant alleges that he was reassigned by Drew, based on Jones' input and discriminatory policy, from his position of Deputy Director of Revenue Management and Support to a position with limited responsibility or room for promotion within the Parks Department. Bryant alleges that although his title and pay remained the same, Drew increasingly reduced his responsibilities. Drew removed Bryant's fiscal and contracting responsibilities and generally reduced his scope of authority.[22] Bryant alleges that Drew also removed his supervisory duties and transferred him to a remote office in the County. Bryant alleges his career was essentially placed in limbo, without opportunity for advancement, since his job title was kept the same

---

[21] Kelley does not allege any facts demonstrating that Stone or Williams were involved these decisions. Summary judgment is granted to Stone and Williams on Kelley's official capacity § 1981 claim for discriminatory reassignment or transfer.

[22] Defendants contend that Kelley, Bryant, and Drake's allegations that their new positions were demeaning, lacked prestige, and did not offer opportunity for advancement are nothing more than non-actionable, second-guessing of an employer's business judgment. Lowe's testimony creates a dispute of fact regarding this claim. Lowe testified that Drew and Jones admitted that these reassignments were designed to be facially neutral but intended to marginalize Drake, Bryant, and Kelley, reduce their influence within the County, and, ultimately, set them up to fail.

but he was given the responsibilities for an entirely different department.  A reasonable person could conclude these facts are sufficient to constitute a discriminatory adverse employment action.

A reasonable individual could also find that Drake's transfer from Assistant Director of the Purchasing and Contracting Department to Acting Assistant Director of the Parks and Recreation Department constituted a discriminatory adverse employment action.  The decision to reassign Drake was made by Stogner and approved by Jones.[23]  Drake has also alleged facts that implicate Drew in this allegedly discriminatory adverse employment action based on Drew's role in determining Drake's job responsibilities once the transfer took effect.  Drake alleges that even though this reassignment included a pay raise, it reduced his responsibilities, required him to perform menial tasks, and left him no opportunity for advancement.  Drake alleges the transfer removed him from the second most senior position in the Parks Department and made him the functional equivalent of a lower-level deputy director.  He was told that he was only there to "prop up" Drew.  Drake further testified that Drew limited his supervisory responsibilities by

---

[23]  Drake does not allege any facts demonstrating that Stone or Williams were involved in making this decision or the subsequent determination of his job responsibilities following this transfer.  Summary judgment is granted to these persons on Bryant's official capacity § 1981 claim for discriminatory reassignment.

requiring Deputy Directors, whom Drake oversaw, to report directly to Drew. Finally, Drake alleges that Drew refused to consult with him and excluded him from decision-making regarding issues for which he was responsible. Drake has also met his *prima facie* burden.

        b)     Legitimate non-discriminatory reason and pretext

Once a plaintiff has made a *prima facie* case, the burden shifts to the employer to offer a legitimate, non-discriminatory justification for its decision. Wascura v. City of S. Miami, 257 F.3d 1238, 1243 (11th Cir. 2001). The employer's burden is "merely one of production; it need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." Schweers v. Best Buy, Inc., 132 F. App'x 322, 325 (11th Cir. 2005). Defendants contend that Kelley was transferred to the Greenspace Bond Project because of her experience and skill set in the area of conservation and parks development. Defendants contend that Kelley's relationships in this area balanced well with Drew's experience in recreation. Defendants contend that Bryant was transferred because of his experience and because relocation to the Tucker office would enable him to have direct oversight of program managers located there. Defendants contend that Drake was transferred to the Assistant Parks Director

position because of his administrative skills which would allow Drew to spend her time focusing on other priorities.  Defendants have met their burden of production.

"To survive summary judgment, Plaintiff must provide sufficient evidence to allow a reasonable fact finder to conclude, at a minimum, that the proffered reasons were not actually the motivation for the employer's decision."  Miller v. Bed, Bath & Beyond, Inc., 185 F. Supp. 2d 1253, 1270 (N.D. Ala. 2002) (citing Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997)).  Plaintiff may do this by showing "that the employer's legitimate nondiscriminatory reasons should not be believed," or "that, in light of all of the evidence, a discriminatory reason more likely motivated the decision."  Id. (citations omitted).  A plaintiff must produce evidence to show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons [for an employment decision] that a reasonable fact finder could find them unworthy of credence."  Hamilton v. Montgomery County Bd. of Educ., 122 F. Supp. 2d 1273, 1281 (M.D. Ala. 2000) (quoting Combs, 106 F.3d at 1539).

Federal courts "do not sit as a super-personnel department that reexamines an entity's business decisions."  Chapman, 229 F.3d at 1030 (quoting Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991)).  It is not appropriate for either the plaintiff or this court to "recast an employer's proffered

nondiscriminatory reasons or substitute his business judgment for that of the employer." Id.  An employer may reassign "an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." Nix v. WLCY Radio/Rahall Commc'n, 738 F.2d 1181, 1187 (11th Cir. 1984).

Plaintiffs have produced sufficient evidence to raise issues of disputed facts that these stated reasons were pretext for unlawful discrimination based on Plaintiffs' race.  See Smith v. BellSouth Telecomms., Inc., 273 F.3d 1303, 1314 (11th Cir. 2001).  Plaintiffs have presented evidence that the decisions to transfer and reassign Kelley, Bryant, Drake were not the result of legitimate business decisions.  Lowe testified that Defendants informed him of an elaborate scheme to transfer and reassign these employees in order to place black employees in management positions and to force these white employees to resign from their positions with the County.  Lowe testified that Bryant, Drake, and Kelley were specifically identified as targets of this plan.  Plaintiffs' allegations thus amount to more than second-guessing of allegedly legitimate business decisions.  Plaintiffs have offered sufficient evidence to allow a reasonable fact finder to conclude Defendants stated reasons for its actions were not actually their motivation: specifically, Plaintiffs have offered evidence of a subtle, calculated plan to

discriminate against white employees. Defendants Motions for Summary Judgment as to Plaintiff Kelley, Bryant, and Drake's official capacity § 1981 claims are denied.

C.     Drake's Failure to Promote Claim

Drake asserts that he was discriminated against when he was not chosen for the position of Director of Parks and Recreation. To state a *prima facie* case for discriminatory failure to promote claim, a plaintiff must establish: (1) membership in a protected class; (2) that he applied for the position; (3) that he was qualified for the position; and (4) that he was rejected despite the qualification; and (5) the position was filled by someone outside his protected class. See <u>Vessels v. Atlanta Indep. Sch. Sys.</u>, 488 F.3d 763, 767-68 (11th Cir. 2005).[24]

Defendants contend that Drake cannot satisfy the qualification element of a *prima facie* case because the Director of Parks and Recreation position required a master's degree and Drake did not have this academic credential. The minimum requirements for the position of Director were:

> Master's degree in Recreation, Physical Education, Public Administration, or other related field; six years of experience in supervision and management of recreation programs, park management, or a related field. An equivalent combination of education and experience may be considered in determining eligibility for this position.

---

[24] Drake has not presented direct evidence of discrimination for this claim.

(Def. SMF ¶ 104, Ex. 17.)  Defendants contend that Drake has offered only his

subjective opinion of his qualification and this is not sufficient to satisfy his *prima*

*facie* burden.

Drake contends that a master's degree is not absolutely required based upon

the language of the job description, and he was qualified for the position based on

his equivalent combination of education and experience.  Drake contends that his

equivalent experience is best demonstrated by the fact that he was given the

Assistant Director position which has a nearly identical "Minimum Requirements"

description.  Drake further contends that Stogner, the principal decision-maker for

the Director position, admitted that Drake was qualified and should have been given

the position a decade earlier.  The Court finds that Drake has presented sufficient

evidence to satisfy his *prima facie* burden on this element.

Defendants next argue that Drake cannot make a *prima facie* case because

he never applied for the position.  Drake argues that he was not required to apply

because an application would have been futile.

Courts have found a limited futility exception to the application requirement.

See Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 365-66 (1977) ("When

a person's desire for a job is not translated into a formal application solely because

of his unwillingness to engage in a futile gesture he is as much a victim of

discrimination as is he who goes through the motions of submitting an application.")  In <u>Teamsters</u>, the Court stated that "[v]ictims of gross and pervasive discrimination" are not required to apply formally for a position if they can establish that but for the employer's discriminatory practices they would have applied for a job.  <u>See id.</u> at 367-68.  Courts, generally, have maintained a high bar for establishing futility.  <u>See, e.g.</u>, <u>Schackleford v. Deloitte & Touche, LLP</u>, 190 F.3d 398, 406 (5th Cir. 1999) (futility not found where evidence of discrimination was speculative and supervisor stated that plaintiff would "probably be better off" in her current position."); <u>Cooper v. Diversicare Mgmt. Serv. Co.</u>, 115 F. Supp. 2d 1311, 1318 (M.D. Ala. 1999).

Drake has not presented sufficient evidence to satisfy this futility exception.  Drake testified that he believed this particular promotion decision was made on the basis of race.  Drake, however, did *not* testify that he was aware of a gross and pervasive scheme of discrimination which deterred him from applying to the Director position and lead him to believe that his application would be futile.  Moreover, Drake's argument that Stogner somehow deterred him from applying is not supported.  Drake testified that Stogner first informed him that he would not be awarded the position and that Drew would be the Director on Monday, March 11, 2002.  This was three days *after* the application deadline had closed.  (Defs.' Ex.

17).[25]  This evidence discredits his claim that he knew that an application for the position would be futile and that the promotion was a foregone conclusion.  Drake cannot meet his *prima facie* burden, and summary judgment is granted.[26]

        D.    <u>Official Immunity</u>

Drew, Stogner, and Williams each assert an official immunity defense to the Dismissed Claim.  For the reasons stated in the November 21, 2006 Order and the Court of Appeals' Opinion in <u>Bryant v. Jones</u>, 575 F.3d 1281 (2009), the Court determines that Defendants' official immunity arguments are unfounded.

## IV.   CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs Bryant, Drake and Kelley's Motion for Reconsideration [354] is **GRANTED.**

**IT IS FURTHER ORDERED** that Stogner's Motion for Summary Judgment [256] be **GRANTED IN PART** and **DENIED IN PART**.  Defendant

---

[25]  While the Director position was listed as an "intra-departmental" transfer, the Court finds no support for the proposition that Drake was somehow deterred from applying based on this fact or that Defendants delayed his transfer to the Parks and Recreation Department to ensure that he could not apply.  Indeed, it appears that other individuals from outside the Parks and Recreation Department applied for and were considered for the position.

[26]  The Court notes that based upon its findings, Defendant Stone remains dismissed from this matter.

Stone's Motion for Summary Judgment [257] is **GRANTED**.  Defendant Jones's

Motion for Summary Judgment [259] is **GRANTED IN PART** and **DENIED IN**

**PART**.  Defendant Williams's Motion for Summary Judgment [263] is

**GRANTED IN PART** and **DENIED IN PART**.  Defendant Drew's Motion for

Summary Judgment [262] is **GRANTED IN PART** and **DENIED IN PART**.

Specifically, summary judgment is granted as to Stoner, Stone, and Williams

on Bryant's § 1981 discriminatory reassignment or transfer claim brought against

Stoner, Stone, and Williams in their official capacities.  Summary judgment is

granted as to Stone and Williams on Kelley and Drake's § 1981 discriminatory

reassignment or transfer claims brought against Stone and Williams in their official

capacities.  Summary judgment is granted as to all Defendants on Drake's § 1981

failure to promote claim.[27]

Summary judgment is denied as to Drew and Jones on Bryant's § 1981

discriminatory reassignment or transfer claim brought against Drew and Jones in

their official capacities.  Summary judgment is denied as to Drew, Jones, and

Stoner on Kelley and Drake's § 1981 discriminatory reassignment or transfer

claims brought against Drew, Jones, and Stoner in their official capacities.

---

[27] Stone remains dismissed from this action.

**IT IS FURTHER ORDERED** that Kristy Bryant Yule's Motion for

Substitution [397] is **GRANTED**.


**SO ORDERED** this 12th day of March, 2010.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE