## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **KRISTY BRYANT YULE,** as Temporary Administrator of the Estate of **MICHAEL BRYANT, JOHN DRAKE, BECKY KELLEY, AND HERB LOWE,** | ) ) ) ) ) ) | |
| **Plaintiffs,** | ) ) ) | **CIVIL ACTION NO. 1:04-CV-2462-WSD** |
| **v.** | ) ) | |
| **VERNON JONES, MARILYN BOYD DREW, MORRIS WILLIAMS, AND RICHARD STOGNER, in their individual capacities, and DEKALB COUNTY,** | ) ) ) ) ) ) | |
| **Defendants.** | ) | |

## PLAINTIFFS' BRIEF IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES AND EXPENSES

## I.   STATEMENT OF FACTS

Plaintiffs Kristy Bryant Yule, as Temporary Administrator for the Estate of

Michael Bryant ("Bryant"), John Drake ("Drake"), Becky Kelley ("Kelley") and Herb

Lowe ("Lowe") (collectively "Plaintiffs") seek to recover their attorneys' fees and

expenses incurred in this matter. [1]  This civil rights litigation was filed on August 24,

2004.  The gravamen of the litigation involved white Plaintiffs suing for intentional

racial discrimination and a racially hostile work environment in DeKalb County,

Georgia and one African-American being retaliated against for speaking out against

this scheme.  The racially discriminatory and hostile environment was purposefully

created by Defendants Vernon Jones and Richard Stogner to carry out DeKalb

County's express goal of creating a "darker"—more African-American—work force

in DeKalb County.  The scheme was carried out by DeKalb County through Jones,

Stogner, Marilyn Drew and others.

---

[1] Pursuant to F.R.C.P. 54(d)(2) and L.R. 54.2(A)(2), this motion for fees need only specify the judgment and the statute or other grounds on the basis of which entitlement to the award is claimed and the approximate amount of the fees and expenses sought.  See L.R. 54.2(A)(2).

Plaintiffs accordingly specify that (a) the Court entered judgment in favor of Plaintiffs Yule and Drake on April 2, 2010; (b) Plaintiffs' Motion for Sanctions was pending at the time of judgment and is reincorporated herein; (c) the Court is empowered to award attorneys' fees and expenses pursuant to its inherent powers and pursuant to 42 U.S.C. § 1988(b); and (d) Plaintiffs estimate in good faith that they are entitled to approximately $2.02 million in attorneys' fees and expenses incurred in prosecuting the matter, plus any multiplier the Court may determine is warranted. Plaintiffs will file "a detailed specification and itemization of the requested award, with appropriate affidavits and other supporting documentation" within 30 days after filing this motion.  See L.R. 54.2(A)(2).

The scheme was enforced through express and implied threats of retaliation and recrimination as Drake, Bryant, Becky Kelley, Eddie Moody, Herbert Lowe, Walter Murray, and Kristy Yule testified at trial. The scheme was advanced with the knowing and active complicity of the DeKalb County Human Resources Office, under the control of its Director, Joe Stone, and other DeKalb County employees. Other DeKalb County agencies, including the County Attorney's Office and the Information Systems Department, worked to cover up Defendants' scheme. Among other things, and as uncovered at trial, files were manipulated and information was withheld from Plaintiffs and the Court.

As Human Resources Director Stone told Mike Amato, Defendants' strategy in this case was not to address the serious allegations against them, but to "bleed [Plaintiffs'] law firm dry." See Aff. of Amato, attached hereto as Exhibit "A". Defendants attempted to "bleed [the] law firm dry" through a strategy of discovery abuse, frivolous pleadings, and general obstruction in an effort to force Plaintiffs and their attorneys to abandon the matter. Such abusive tactics included, but are not limited to, the following: (a) submitting fifty-three (53) separate written discovery requests to Plaintiffs during the litigation;[2] (b) broadly objecting to most of Plaintiffs' discovery requests, necessitating a lengthy hearing on Defendants' refusal to produce

---

[2] Plaintiffs in turn filed only ten such requests in the original discovery period and five such requests once discovery was reopened by the Court.

relevant and discoverable information; (c) refusing to produce information contained in DeKalb County's PeopleSoft database, although it was readily available and known to exist; (d) covering up information, which ultimately caused the Court to re-open the discovery period; (e) filing fourteen (14) separate initial motions for summary judgment solely to increase Plaintiffs' costs and burden; (f) filing frivolous motions throughout this litigation, including some that contained misrepresentations of the law and facts; (g) advancing frivolous arguments on appeal and in motions to the Eleventh Circuit; (h) and filing a poorly-grounded petition for certiorari to the United States Supreme Court.

Not surprisingly during this six year ordeal, Defendants refused to engage in any good faith settlement negotiations with Plaintiffs until the eve of trial. <u>See</u> Aff. of Anulewicz attached hereto as Exhibit "B". Plaintiffs broached the issue at the Rule 26 preliminary planning conference, after the Court's findings on summary judgment, prior to Defendant Jones leaving office, and after the new DeKalb County CEO, Burrell Ellis, took office—all with no real response from Defendants. <u>Id</u>. Mediation was only scheduled after the Eleventh Circuit upheld this Court's summary judgment order and denied rehearing en banc. <u>Id</u>. Shortly after that settlement conference, the matter was in fact settled, pending approval by the DeKalb County Board of Commissioners and Ellis. <u>Id</u>. But despite Plaintiffs spending significant time and

effort trying to resolve this matter, the DeKalb County Board of Commissioners refused to consider the settlement proposal and instead "tabled it" in part for "political reasons." Id.

Plaintiffs accordingly prosecuted this matter though trial. At trial, Defendants continued their pattern of deceit, obstruction, and violation of court rules.[3] Defendants' disregard for the Plaintiffs' rights and the Court's rules was also clearly expressed in the apparent perjury by Defendant Drew and other current DeKalb County employees, Kelvin Walton and Joe Stone, concerning their attempt(s) to violate the Court's sequestration order.[4]

After trial, and despite Defendants' efforts to conceal the evidence, the jury found that DeKalb County, Jones, Stogner, and Drew had a policy, practice, or custom of discriminating against white employee and ruled in favor of Plaintiffs Drake and Bryant on all of their claims. The jury awarded compensatory damages and it also awarded punitive damages against the individual Defendants. Despite being found

---

[3] This misconduct has been demonstrated, among other places, in Plaintiffs' Motion for Sanctions for Litigation Misconduct. Despite being requested to do so, Defendants and their attorneys could not explain the failure to produce material documents in this case or the manipulation of Bryant's personnel file. Plaintiffs also note that Defendants' Request For Limiting Instruction Regarding The Letters Of Counseling that contained express misrepresentations of law and fact, namely whether supplementation of discovery for the counseling letters was required and whether Plaintiffs ever asked for such letters in discovery.

[4] Given the lengths DeKalb County has gone to conceal material information and its agents' willingness to perjure themselves, there is no telling what the "whole truth" of this matter is.

guilty of violating one of the most fundamental rights of any citizen, namely, the right to be treated equally under the law by their government, Defendants' recalcitrance continues to this day.  After trial, Defendants claimed that throughout this litigation they have "stood on their principles"[5] and "will not be deterred by anyone in any law suit."  See http://www.myfoxatlanta.com/dpp/news/Jones-Plans-to-Talk-on-Dekalb-Lawsuit-04020 (statements contained in Exhibit "C"); see also Jeffrey Scott, *DeKalb Discrimination Suit: Jones Ordered to Pay*, Atlanta Journal-Constitution, April 1, 2010 (current DeKalb County CEO Burrell Ellis statement "I view this as a favorable outcome for DeKalb County" and current County Commissioner Lee May impugning the system and saying the outcome was biased) attached hereto as Exhibit "D"; R. Robin McDonald, *Race Plaintiffs Win Verdict, But Only Small Payout In DeKalb Suit*, Daily Report Online, April 2, 2010 ("the decision that the case was about petty workforce squabbles" and not about "race discrimination" "Vernon Jones didn't lose" "Vernon Jones won") attached hereto as Exhibit "E"; Defendants' Closing Argument (case is about "petty work place grievances").  In other words, Defendants would do it all again.

---

[5] Having been found guilty of race discrimination, it is hard to determine what "principles" DeKalb County espouses it stands upon.  The statements appear to be joined by current members of the DeKalb County Commission.  For instance, rather than acknowledging the verdict, Councilman Lee May blamed the verdict on the Court. See Exhibit D.

In their effort to cover up their discriminatory conduct and to bleed Plaintiffs dry, Defendants expended over $2.53 million defending this matter prior to trial. See, e.g. Bill Rankin, *$2 Million Verdict Sought In DeKalb Discrimination Case*, Atlanta Journal-Constitution, March 31, 2010 attached hereto as Exhibit "F"; Ex. E. Plaintiffs in turn have incurred approximately $2.02 million in attorneys' fees and expenses *through* the conclusion of the trial.  Plaintiffs are entitled to recover their fees and expenses in full and also respectfully request that the Court grant a multiplier to their fees given the nature of this matter.  The Court is entitled to grant these requested fees pursuant to (a) its inherent powers and (b) 42 U.S.C. § 1988.

II.     **DISCUSSION AND CITATION OF LEGAL AUTHORITY**

A.     **The Court Has Inherent Power To Award Attorneys' Fees In This Case**

On March 30, 2010, in the midst of trial, Plaintiffs filed a Motion for Sanctions for Litigation Misconduct (the "Motion for Sanctions") asking the Court to strike the Answers of Defendant DeKalb County and Marilyn Boyd Drew due to ongoing misconduct and fraud on the Court.  The Motion for Sanctions is incorporated herein by reference and attached hereto as Exhibit "G".[6]

---

[6] At trial, the Court took Plaintiffs' Motion for Sanctions under advisement. Plaintiffs maintain this motion.  But as explained herein, Plaintiffs request that their remedy not be a new trial or striking Defendants' answers, but rather the award of Plaintiffs' attorneys' fees and expenses.

In their Motion for Sanctions, Plaintiffs requested a new trial as punishment for Defendants' wrongdoing.  This sanction would still be proper given that the misconduct likely reduced the damages award in this case and resulted in liability verdicts in favor of DeKalb County and Drew with regard to the claims of Plaintiffs Kelley and Lowe.  But Plaintiffs have been involved in this litigation for almost six (6) years.  During this time Bryant passed away.  The remaining Plaintiffs wish to move on with their lives rather than sacrificing the additional time and expense a retrial and appeal of this matter would require.

Plaintiffs believe the verdict they achieved, which is inextricably intertwined with the few claims that did not succeed, overwhelmingly vindicates their collective position and has aired a purposefully hidden evil in DeKalb County.  Plaintiffs have achieved this result despite Defendants' best efforts to prevent discovery of the facts and a fair trial.

As set forth in Plaintiffs' Motion for Sanctions, the Court has the inherent power and discretion to strike a defendant's answer and enter a default judgment against that defendant in order to "protect the orderly administration of justice and to preserve the dignity of the tribunal."  In re: Amtrak "Sunset Limited" Train Crash In Bayou Canot, Alabama On September 22, 1993, 136 F. Supp. 2d 1251, 1264-65 (S.D. Ala. 2001) (citing Kleiner v. First Nat. Bank of Atlanta, 751 F.2d 1193, 1209 (11th

Cir. 1985)) (the striking of an answer and entry of default judgment against a defendant is a drastic remedy that should be reserved to penalize egregious conduct); see also Quantum Communications Corp. v. Star Broad., Inc., 473 F. Supp. 2d 1249, 1269 (S.D. Fla. 2007).

The United States Supreme Court has clearly articulated that a trial court also has the inherent power to impose attorneys' fees and expenses against a party who has engaged in bad faith during litigation. See Chambers v. Nasco, Inc., 501 U.S. 32, 45 (1991) (if outright dismissal of a lawsuit is within the inherent powers of a court, "[c]onsequently, 'the less severe sanction' of an assessment of attorneys' fees is undoubtedly within a court's inherent power as well.'"). "[A] court may assess attorneys' fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Id. at 46 (citing Ayleska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240 258-69 (1975)).[7]

"The key to unlocking a court's inherent power is a finding of bad faith." Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc., 561 F.3d 1298 (11th Cir. 2009). "Bad faith exists when the court finds that a fraud has been practiced upon it, or 'that the very temple of justice has been defiled,' or where a party or attorney knowingly or

---

[7] The fact that Plaintiffs Bryant and Drake have a right to recover fees pursuant to 42 U.S.C. § 1988 does impair the Court's inherent authority to award fees. A statutory attorneys' fees scheme does not "displace[] the inherent power to impose sanctions for [] bad-faith conduct." Chambers, 501 U.S. at 46-47. The Court may accordingly award fees under either its inherent power, § 1988, or both.

recklessly raises a frivolous argument, delays or disrupts the litigation, or hampers the enforcement of a court order." <u>Quantum Communications Corp.</u>, 473 F. Supp. 2d at 1268-69 (citations omitted). Defendants' actions here evidence the type of bad faith that permits the unlocking of the Court's inherent power.

The facts of this case certainly would have warranted striking Defendants' answers and/or a new trial. Defendants' actions even more certainly warrant the lesser sanction of awarding Plaintiffs' attorneys' fees. Defendants' misconduct is deep, and it has existed throughout this litigation. Some of the misconduct was only discovered during the trial itself; some will never be known.[8] Had the facts or misconduct been known during discovery, the entire case may have taken a different path. In lieu of striking Defendants' answers or a new trial, Plaintiffs respectfully request that the Court award Plaintiffs' fees incurred during this litigation, including a multiplier, which this Court has discretion to award.

---

[8] Given the lengths Defendants will go to hide their bad conduct this is an unfortunate reality. As Mike Amato testified, Defendants will employ delay and obstruction to avoid a hearing on the merits. As Faye McCommon testified, and as Defendants' refusal to comply with valid open records requests show, Defendants will violate the law to avoid providing incriminating information that is readily at their finger tips. As Eddie Moody testified, Vernon Jones will even demand that a public official lie to a grand jury to avoid liability. <u>See</u> Eddie Moody Affidavit attached hereto as Exhibit "H".

**B.**     **Attorneys' Fees Are Warranted Under 42 U.S.C. § 1988**

Plaintiffs Bryant and Drake recovered judgment against Defendants DeKalb County, Jones, Stogner, and Drew.   Accordingly, these Plaintiffs are "prevailing parties" under 42 U.S.C. § 1988(b).  They are accordingly entitled to the full amount of their attorneys' fees and expenses.

Plaintiffs filed this litigation pursuant to 42 U.S.C. §§ 1981 and 1983 as well as the First Amendment and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, alleging that Defendants  violated Plaintiffs' rights to be free from racial discrimination and a racially hostile work environment. Plaintiffs efficiently and succinctly conducted discovery.  In the initial discovery period, Plaintiffs deposed only Defendants Jones, Stogner, Williams, Drew, and former-Defendant Stone.  When the Court re-opened discovery based on Defendants' bad conduct, Plaintiffs deposed only Jones, Williams, and Stone.   Each of these persons was a key witness at trial in support of Plaintiffs' successful 42 U.S.C. § 1983 equal protection claims.  The majority of Plaintiffs' attorneys' fees and expenses were incurred in dealing with Defendants' discovery abuse, obstruction, and frivolous motions.  All of Plaintiffs' pretrial and trial efforts were necessarily and reasonably incurred and were applied to the prosecution of Plaintiffs' successful claims against DeKalb County, Jones, Stogner, and Drew.

1.        **Plaintiffs Are Prevailing Parties**

Whenever a plaintiff secures any enforceable relief in a 42 U.S.C. §§ 1981 or 1983 litigation, that plaintiff is a "prevailing party" under 42 U.S.C. § 1988.  See, e.g., Farrar v. Hobby, 506 U.S. 103, 114 ("the prevailing party inquiry does not turn on the magnitude of the relief obtained"); Caban-Wheeler v. Elsea, 71 F.3d 837, 842 (11th Cir. 1996) ("nominal damages alone are sufficient").  Plaintiffs Bryant and Drake successfully prosecuted their hostile environment and racial discrimination claims against Defendants DeKalb County, Jones, Stogner, and Drew.

2.        **Plaintiffs Were Not Required To Succeed On Each Of Their Claims To Recover All Of Their Attorneys' Fees And Expenses**

A plaintiff "need not succeed on all claims in order to obtain attorneys' fees." See Lambert v. Fulton County, 151 F. Supp. 2d 1364, 1368 (N.D. Ga. 2000); accord Solomon v. Gainesville 796 F.2d 1464, 1466-67 (11th Cir. 1986) (where plaintiff succeeded in "primary objective" of litigation, attorneys fees were appropriate). Indeed, the Supreme Court has held:  "Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised."  Hensley v. Eckerhart, 461 U.S. 424, 440 (1983).

The claims in Plaintiffs' Complaint are inextricably related. In fact, all of Plaintiffs' pretrial and trial preparations would have occurred even if Plaintiffs had asserted claims only against DeKalb County, Jones, Stogner, and Drew. As demonstrated at trial, Joe Stone and Morris Williams, Defendants against whom Plaintiffs did not recover, were critical and necessary witnesses to this case. The taped conversation of Stone and Williams contained in Plaintiffs' Exhibit 112 alone demonstrates their necessity at trial and in discovery. This exhibit, and Williams' and Stone's testimony regarding it, candidly revealed Defendants' scheme to racially discriminate against white employees with regard to promotions in DeKalb County.

Moreover, discovery and trial efforts related to the claims of Plaintiff Kelley and Plaintiff Lowe were necessary and inextricably intertwined with the claims of Bryant and Drake. First, and as set forth above, absent Defendants' bad faith, the verdict on these claims may likely have been different. Second, Kelley and Lowe provided invaluable information related to Bryant and Drake's claims and their testimony regarding the facts surrounding Bryant and Drake's discriminatory transfers and harassment would have been necessary regardless of their participation. Finally, the evidence admitted through Kelley and Lowe was essential in establishing Defendants' scheme to discriminate against white employees—an essential element in the jury's finding of liability against DeKalb County.

A judgment, including punitive damages, on Plaintiffs' primary claims, is "substantial relief" entitling Plaintiffs to the full amount of the attorneys' fees requested.  See Hensley, 461 U.S. at 440.  Plaintiffs' victory is not the type of "de minimus" or "technical" victory that would permit a reduction of attorneys' fees and expenses.  See, e.g., Farrar, 506 U.S. at 114-16 (affirming denial of fees where $1 in nominal damages was awarded when $17 million was claimed).  The reasonableness of a 42 U.S.C. § 1988 attorneys' fee award is premised primarily upon (a) the difference in the amount recovered and the amount claimed, (b) the significance of the legal issue upon which a plaintiff prevailed, and (c) the public purpose served by the litigation.  See id. at 120-22 (O'Connor, J. concurring).  In this case, Plaintiffs claimed no specific amount of money at trial.  While they suggested a possible award in argument, the non-economic damages claimed are always in the sound discretion of the jury.  The legal issue on which Plaintiffs prevailed was the central legal issue in the case—namely Defendants' denial of Plaintiffs' equal protection rights to be free from intentional racial discrimination and harassment.  Finally, the public purpose served by this litigation is important.  Plaintiffs have shown public officials that intentional deprivation of a citizen's constitutional rights will not be tolerated.

Accordingly, Plaintiffs are entitled to the entire amount of the attorneys' fees and expenses requested.

### 3.  **The Evidence Will Establish That Plaintiffs' Attorneys' Fees Are Reasonable**

Pursuant to L.R. 54.2, Plaintiffs will file the necessary affidavits and other information necessary to show that Plaintiffs' fees are reasonable.  Plaintiffs will request a lodestar in calculating their attorneys' fees and expenses.  See Smith v. Atlanta Postal Credit Union, No. 09-12060, 2009 U.S. App. LEXIS 213281 at **5-6 (11th Cir. September 28, 2009) (there is a strong presumption that the lodestar figure represents a reasonable fee and determining the lodestar figure is within the discretion of the trial court) (citing Pennsylvania v. Delaware Valley Citizens' Counsel for Clear Air, 478 U.S. 546, 565 (1986)).

### 4.  **A Lodestar Enhancement Is Also Warranted**

In the Eleventh Circuit, the Court may enhance a lodestar award if: (a) Plaintiffs' counsel represents an unpopular client, and as a result, the attorney suffers a loss of standing in the community which damages his practice and income; or (b) the results achieved were exceptional and the quality of representation is exceptional.  See Kenny A. v. Perdue, 532 F.3d 1209,1233-34, 1236-1238 (11th Cir. 2008), *cert. granted in part*, ___U.S.___, 129 S. Ct. 1907 (2009)[9]; NAACP v. City of Evergreen, 812 F.3d 1332 (11th Cir. 1987) (allowing enhancement for exceptional results);

---

[9] Oral argument has been heard in Kenny A., and a decision should be forthcoming this term of the Supreme Court.

Norman v. Housing Auth. of Montgomery, 836 F.2d 1292 (11th Cir. 1988) (enhancement authorized if exceptional results and representation was superior).

The first factor, namely the potential "stigma" placed upon Plaintiffs' counsel is grounds for enhancement.  The Eleventh Circuit recently suggested: "[w]e hope that three-and-a-half decades after [the decision in NAACP v. Allen, 340 F. Supp. 703 (M.D. Ala. 1972) permitting such enhancements] attorneys who represent victims of racial discrimination no longer suffer social, political or professional ostracism.  But attorneys who represent other plaintiffs might." Id. at 1234.  Plaintiffs respectfully suggest that such litigations against the government, as shown by Defendants' post-trial commentary accusing Plaintiffs' attorneys of extortion and racial and/or political bias (despite the jury's finding of liability against the County), clearly damages Plaintiffs' attorneys' standing in the DeKalb County community.  As "outsiders" opposing the still prevailing government, which is willing to take significant retaliatory actions against anyone who would hire Plaintiffs' firm in the future (and "bleed them dry" if they dare oppose DeKalb County), this certainly risks significant economic harm.

Moreover, Plaintiffs respectfully contend that they achieved extraordinary results given Defendants' conduct set forth above.  They exposed and proved a county-wide policy of racial discrimination, despite Defendants' efforts (and the use

of substantial public funds) to cover it up.  Without Plaintiffs' attorneys' efforts, none of this discrimination, which infected all departments of DeKalb County over which Vernon Jones had control, would ever have been vetted or revealed.  Plaintiffs respectfully submit that other lawyers would have abandoned these claims upon hitting the multiple, improper walls thrown up by Defendants.

Moreover, research on LEXIS shows that despite the deeply pervasive nature of the discriminatory scheme here, no other lawyer has successfully litigated any claims against DeKalb County during the Jones administration.[10]  Plaintiffs' efforts benefited all of DeKalb County when no one else had succeeded previously.  For this reason as well, Plaintiffs should be entitled to a multiplier here.

Finally, it is well recognized that a significant delay in payment warrants a multiplier as well.  Plaintiffs' attorneys' fees should accordingly be enhanced to compensate for the six years Defendants intentionally delayed the hearing of Plaintiffs' claims.  See Missouri v. Jenkins, 491 U.S. 274, 283-84 (1989); Shott v. Rush-Presbyterian-St Luke's Med. Ctr., 338 F.3d 736 (7th Cir. 2003).

---

[10] The only case that had some success, McMillan v. DeKalb County, Civil Action File No. 1:04-CV-03039 (filed October 18, 2004) (only Drew and DeKalb County remained as Defendants after motion to dismiss), was filed by another Parks Department employee after Plaintiffs filed their suit and was based on Plaintiffs' Complaint here.  The McMillan matter was settled on the eve of trial with a settlement agreement stating that there was no discrimination, only a "mistake" by Marilyn Boyd Drew.

## III.   <u>CONCLUSION</u>

For all these reasons, and for the reasons to be filed in Plaintiffs' subsequent L.R. 54.2 filings, Plaintiffs are entitled to all of their attorneys' fees and expenses in the amount of approximately $2.02 million.  In light of Defendants' conduct before, during, and after trial, and Plaintiffs' successes despite such conduct, Plaintiffs respectfully request that the Court exercise its discretion to award a multiplier for those fees.

Respectfully submitted this 15[h] day of April 2010.

<div style="margin-left:40%">

s/ Christopher S. Anulewicz
Michael J. Bowers
Georgia Bar No. 071650
Christopher S. Anulewicz
Georgia Bar No. 020914
James L. Hollis
Georgia Bar No. 930998
K. Alex Khoury
Georgia Bar No. 416978
mbowers@balch.com
canulewicz@balch.com
jhollis@balch.com
akhoury@balch.com

BALCH & BINGHAM LLP
30 Ivan Allen Jr. Blvd., NW
Suite 700
Atlanta, Georgia 30308
Telephone: (404) 261-6020
Facsimile:  (404) 261-3656

</div>

J. Tom Morgan
Georgia Bar No. 522675
160 Clairemont Avenue
Suite 500
J. Tom Morgan Law
P.O. Box 1324
Decatur, Georgia  30031
Telephone: 404-687-1002
jtom@jtommorganlaw.com

Attorneys for Plaintiffs

## <u>CERTIFICATE OF COUNSEL REGARDING FONT SIZE</u>

Counsel certifies that the foregoing has been prepared using Times New

Roman font size 14 in accordance with Local Rules 5.1(B)(3) and 7.1(D).

This15th day of April, 2010.

<div align="right">

<u>s/Christopher S. Anulewicz</u>
Georgia Bar No. 020914

</div>

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 15, 2010, I sent by electronic mail the foregoing to

the following attorneys of record:

Kerri Anne Gildow
kgildow@rh-law.com

Sharon P. Morgan
morgan@elarbeethompson.com

Robert B. Remar
RRemar@rh-law.com

Dwight Lowell Thomas
dlowellthomas@hotmail.com

Brent L. Wilson
bwilson@etsw.com

s/ Christopher S. Anulewicz
Christopher S. Anulewicz
Georgia Bar No. 020914